1

2

3

4                    UNITED STATES DISTRICT COURT

5                    EASTERN DISTRICT OF CALIFORNIA

6

7   PRAVEEN SINGH, an individual;     No. 1:15-cv-00646-GEB-BAM
    and JOYTESHNA KARAN, an
8   individual,

9            Plaintiffs,             **ORDER GRANTING IN PART AND**
                                     **DENYING IN PART DEFENDANTS'**
10       v.                          **MOTION TO DISMISS**

11  KIRK BUNCH, an individual;
    FRANK NAVARRO, an individual;
12  JOHN EVERS, an individual;
    DAVID HARRIS; BIRGIT
13  FLADAGER; COUNTY OF
    STANISLAUS, a government
14  entity; ADAM CHRISTIANSON;
    STANISLAUS COUNTY SHERIFF
15  DEPARTMENT, a government
    entity; and DOES 1-100,
16  inclusive,

17           Defendants.

18

19          Defendants Birgit Fladager, County of Stanislaus (the

20  "County"), Stanislaus County Sheriff Department (the "Sheriff's

21  Department"), Adam Christianson ("Sheriff Christianson"), David

22  Harris,   and   Kirk   Bunch   (collectively,   "Defendants")   seek

23  dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

24  of certain federal and state claims Plaintiffs Praveen Singh and

25  Joyteshna Karan (collectively, "Plaintiffs") allege in their

26  Complaint. (Defs.' Mot. to Dismiss ("Mot."), ECF No. 15.)

27  Defendants Harris and Bunch also move for a more definite

28

                                   1

1  statement under Rule 12(e) of any claim against them that is not

2  dismissed without leave to amend. (Mot. 14:19–21.)

3  **I.   FACTUAL ALLEGATIONS**

4       The following factual allegations in the Complaint

5  concern the motions.

6       Since 2003, Plaintiff Singh "has been the subject of an

7  erroneous and malicious investigation related to the homicide of

8  Korey Kauffman." (Compl. ¶ 15, ECF No. 1.) "It appears the . . .

9  investigation . . . is politically motivated, or . . . a[]

10 personal vendetta by Defendants." (Compl. ¶ 18.)

11      District Attorney Defendant Fladager, Chief Deputy

12 District Attorney Defendant Harris, and District Attorney

13 Investigator Defendant Bunch led the investigation. (Compl. ¶¶ 3,

14 9, 16.) Further, officers "from the Turlock, Modesto, and Ceres

15 Police Departments, [the] Department of Corrections, and the

16 Stanislaus County Sheriff's Department were involved in a joint

17 task force investigating the crime." (Compl. ¶ 20.)

18      "At some point during this investigation, Defendant

19 Bunch came to believe [Plaintiff] Singh was involved in the

20 murder." (Compl. ¶ 20.) "Investigators[1] have engaged in an all-

21 out bully campaign against [Plaintiff] Singh and the 'Indian'

22 community . . . ." (Compl. ¶ 19.) Investigators "searched the

23 business and residence of" another individual, who Investigators

24 thought had information about the homicide. (Compl. ¶ 19 n.2.)

25 Plaintiff Karan has "been investigated, harmed, and bullied by

26

27 _____

28 [1]    Plaintiffs refer to Defendants Bunch, Frank Navarro, and John Evers as "Investigators." (Compl. ¶ 12.)

2

1 the District Attorney's office, [Defendant] Bunch, and [other

2 unidentified] Defendants." (Compl. ¶ 19 (emphasis removed).)

3        Before September 6, 2013, "a confidential witness hired

4 by [Defendant] Bunch" called Plaintiff Singh and "attempted to

5 induce [him] to 'talk' about the murder." (Compl. ¶ 21.)

6 "Although [Plaintiff] Singh had [no involvement with the murder

7 and therefore no information] to offer [to] the investigation,

8 he . . . cooperated with Investigators." (Compl. ¶ 21.)

9        On October 2, 2013, Plaintiff Singh sat for a polygraph

10 examination. (Compl. ¶ 22.) Thereafter, "Investigators began

11 their attack on" Plaintiff Singh's friends and family. (Compl.

12 ¶ 23.) Defendant Bunch follows a pattern where "he would threaten

13 the friends and family of [Plaintiff] Singh, [and] accus[e] . . .

14 [Plaintiff] Singh '[of being] a murderer' and . . . [of]

15 run[ning] some sort of a prostitution ring." (Compl. ¶ 23

16 (emphasis removed).) "On numerous occasions, [Plaintiff] Singh's

17 friends were threatened by Investigators to 'get away from Singh'

18 because 'he is a murderer' and 'a pimp.'" (Compl. ¶ 24.)

19        "On or about September 13, 2013, Plaintiff

20 [Karan] . . . voluntarily went to the District Attorney's office

21 to 'talk' about the investigation." (Compl. ¶ 25.) "At this time,

22 [Plaintiffs] Singh and Karan were the parents of one child, and

23 [Plaintiff] Karan was [five-months] pregnant with a second

24 child . . . ." (Compl. ¶ 26.) "Although [Plaintiff] Karan was

25 cooperating with Investigators, answering their questions

26 truthfully, Investigators threatened [her] with an investigation

27 for real estate fraud if she didn't 'give them what they

28 wanted[,]'" meaning "information incriminating [Plaintiff]

3

Singh." (Compl. ¶ 25.) Defendant Bunch told Plaintiff Karan, "If you don't stay away [from Singh], I will come and take your kids away and put them in foster care," (Compl. ¶ 26 (alteration in original) (emphasis removed)), and, "I will investigate you and take your children away." (Compl. ¶ 26 (emphasis removed).)

Plaintiff Singh was arrested on October 29, 2013, "although he learned it was not regarding the murder investigation." (Compl. ¶ 27.) While in jail, Plaintiff Singh was housed with members of the Northern Ryders gang. (Compl. ¶ 28.) During this time, Defendant Bunch "attempted to 'set up' [Plaintiff] Singh with these gang members by listening in on conversations." (Compl. ¶ 28.) His "bail bond was posted at about 10:00 PM the same day, but [he] was[ not] released until 4:00 AM." (Compl. ¶ 28.)

On or about November 11, 2013, Plaintiff "Singh voluntarily called [Defendant] Bunch and asked him 'What do you want from me?'" (Compl. ¶ 29 (emphasis removed).)

Plaintiff Singh was again arrested on November 27, 2013; the arrest was unrelated to the homicide. (Compl. ¶ 30.) "[A]fter his arrest, Investigators sought and placed [Plaintiff] Singh under a [section] 1275 hold."[2] (Compl. ¶ 34.) Plaintiff Singh was again housed with Northern Ryders gang members. (Compl. ¶ 36.) "A gang member told [Plaintiff] Singh that [Defendant] Bunch told them that Singh was a 'snitch' . . . ." (Compl. ¶ 37.) "Because of this accusation by [Defendant] Bunch, several members threatened [Plaintiff] Singh with his life." (Compl. ¶ 37.)

---

[2]   Plaintiffs presumably refer to California Penal Code section 1275, which concerns bail issues.

4

Plaintiff "Singh immediately yelled for a guard[,]" and was moved to a laundry facility. (Compl. ¶ 38.)

On December 2, 2013, Plaintiff "Karan delivered her child." (Compl. ¶ 41.) "The birth had complications due to the stress suffered by [Plaintiff] Karan, from [Plaintiff] Singh being in jail . . ., together with the threats by [Defendant] Bunch." (Compl. ¶ 41.)

On February 27, 2014, Plaintiff Singh was arrested "for violation of Welfare and Institutions Code § 14107(b)(4)(a)." (Compl. ¶ 43.) Before his arrest, Plaintiff Singh gave an unidentified person the keys to Plaintiff Karan's real estate brokerage, Royal Royalty. (Compl. ¶ 43.) Investigators "search[ed] [Royal Realty's] . . . files[ and] computers, and ended up seizing the majority of [its] files, computers, and printers." (Compl. ¶ 44.) Thereafter, Plaintiff "Singh was taken to the Investigators['] office . . ., where [Plaintiff] Singh was asked questions about the murder investigation." (Compl. ¶ 44.)

"On or about April 2, 2014, Investigators went to the office of Stewart Title, a title company used by Royal Realty . . . ." (Compl. ¶ 47.) Investigators learned Plaintiff "Singh stood to benefit from a pending transaction, and put Stewart Title 'on notice' [of the homicide investigation] with the goal that it would harm [Plaintiff] Singh financially if Investigators could convince Stewart Title to drop Royal Realty [and Plaintiffs] as customers." (Compl. ¶ 47.) Because of Defendants' actions, "Stewart Title did in fact stop doing business with" Plaintiffs. (Compl. ¶ 49.)

1    Plaintiffs also allege the County, Defendant Fladager,

2   and Defendant Harris have policies that include: (1) failing to

3   train on "constitutional limits on the use of force and abuse of

4   power"; (2) failing to punish unconstitutional use of force; (3)

5   tolerating   unconstitutional   use   of   force;   (4)   failing   to

6   investigate   citizen   complaints;   (5)   tolerating   collusive

7   statements;   (6)   permitting   outrageous   tactics   and   tortuous

8   activity;  and  (7)  failing  to  supervise  those  involved  in  the

9   investigation. (Compl. ¶¶ 51, 52.) Plaintiffs also allege the

10  County,  Defendant  Fladager,  and  Defendant  Harris  encouraged,

11  tolerated,  ratified,  and  acquiesced  to  the  conduct  about  which

12  each Plaintiff complains. (Id.)

13                          **II.   LEGAL STANDARD**

14   "To  survive  a  motion  to  dismiss,  a  complaint  must

15  contain  sufficient  factual  matter,  accepted  as  true,  to  state  a

16  claim  to  relief  that  is  plausible  on  its  face."  Caviness  v.

17  Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir.

18  2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim

19  has facial plausibility when the plaintiff pleads factual content

20  that allows the court to draw the reasonable inference that the

21  defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

22  at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

23  (2007)). "Determining  whether  a  complaint  states  a  plausible

24  claim for relief . . . [is] a context-specific task that requires

25  the . . . court to draw on its judicial experience and common

26  sense." Id. at 679.

27   "For  purposes  of  a  motion  to  dismiss,  we  accept  all

28  well-pleaded allegations of material fact as true and construe

them in the light most favorable to the nonmoving party."
Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

> [Further,] the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds.

In re Gilead Sciences Secs. Litig., 536 F.3d 1049, 1057 (9th Cir. 2008) (citations omitted).

**III.  DISCUSSION**

**A.   All Defendants**

    **1.   Standing**

Each Defendant argues that Plaintiff Karan lacks standing to allege the following claims under 42 U.S.C. § 1983: unlawful detention, deliberate indifference, unlawful search and seizure, and racial discrimination, including denial of equal protection of law; contending "[t]here are no allegations of any constitutional injury involving a legally protected interest caused by a particular defendant." (Mot. 8:26–27, 9:4–5.)

To have standing, a plaintiff must plausibly allege three standing elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the

7

> court. Third, it must be likely, as opposed
> to merely speculative, that the injury will
> be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (alterations in original) (citations and internal quotation marks omitted). Further, in the equal protection context, "if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." United States v. Hays, 515 U.S. 737, 743–44 (1995) (citations and internal quotation marks omitted).

Plaintiff Karan has standing to assert a racial discrimination claim under § 1983, based on her assertion that she was personally denied equal treatment by Defendants' alleged conduct during the homicide investigation.[3] Plaintiff Karan alleges a concrete and actual injury caused by Defendants. Specifically, she alleges she sustained emotional stress with the manifestation of a physical injury—birth complications—caused in part by District Attorney Investigator Defendant Bunch when he threatened to investigate her for real estate fraud and take away her children. (Compl. ¶¶ 26, 41, 82.) She further alleges she has "suffered emotional distress, stress, anguish, anxiety, and live[s] in fear of [her] life[; and that she has] been directly harmed . . . by Investigators who have intentionally interfered with [her] business, and destroyed [her] reputation among the community, including their close church community." (Compl.

---

[3]    Plaintiff Singh, rather than Plaintiff Karan, asserts unlawful detention, deliberate indifference, and unlawful search and seizure claims under § 1983.

¶¶ 50, 82.) See City of Los Angeles v. Lyons, 461 U.S. 95, 96 (1983) (holding plaintiff "presumably" had "standing to claim damages against the individual officers [who choked him] and perhaps against the City"). Therefore, this portion of Defendants' dismissal motion is denied as to Plaintiff Karan's racial discrimination claim.

> **2. Racial Discrimination in Violation of the Fourteenth Amendment's Equal Protection Clause Claim**

Defendants seek dismissal of each Plaintiff's racial discrimination claim, which they jointly allege under the Fourteenth Amendment's Equal Protection Clause, arguing it is not a viable claim.[4] Specifically, Defendants contend, *inter alia*, this claim fails to allege "that any of the actions that Plaintiffs attribute to Defendants were taken because of Plaintiffs' race, national origin, religion, or any other legally protected characteristic." (Mot. 11:18-21.) Defendants further contend Plaintiffs "fail[] to plead . . . facts reflecting . . . disparate treatment." (Mot. 11:24.)

Plaintiffs allege, *inter alia*, they were subjected to "racially motivated arrests, searches, and seizures." (See Compl. ¶ 82.) They further allege "race was a motivating factor in the decision to use excessive force[ and] maliciously prosecute Plaintiff [Singh], and [that these actions were] undertaken with the purpose of depriving Plaintiffs of the equal protection and benefits of the law." (Compl. ¶ 83.)

---

[4] Plaintiffs also allege a racial discrimination claim under 42 U.S.C. § 1981 that is not challenged in the motions. (See Compl. 18:11-14.)

1     "To state a claim for violation of the Equal Protection

2     Clause, a plaintiff must [allege] that the defendant acted with

3     an intent or purpose to discriminate against [plaintiff] based

4     upon [plaintiff's] membership in a protected class[,]" <u>Serrano v.</u>

5     <u>Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted),

6     or "that [plaintiff] has been intentionally treated differently

7     from others similarly situated and that there is no rational

8     basis for the difference in treatment." <u>Vill. of Willowbrook v.</u>

9     <u>Olech</u>, 528 U.S. 562, 564 (2000). Further, "a long line of Supreme

10    Court cases make clear that the Equal Protection Clause requires

11    proof of discriminatory intent or motive." <u>Navarro v. Block</u>, 72

12    F.3d 712, 716 (9th Cir. 1995) (citations omiited).

13        Plaintiffs plead facts from which it can be inferred

14    that they are of Indian origin. (<u>See</u> Compl. ¶ 19.) <u>See</u> <u>Reedy v.</u>

15    <u>Precyse Solutions LLC</u>, No. 1:12-CV-02061-AWI, 2013 WL 1563254, at

16    *6 (E.D. Cal. Apr. 12, 2013) ("As a person of . . . Indian

17    origin, Plaintiff is a member of a protected class.").

18        Plaintiffs' conclusory assertions fail to plausibly

19    allege that Defendants acted with an intent or purpose to

20    discriminate against Plaintiffs based upon their membership in a

21    protected class. Their allegation that "the motivation behind

22    this investigation and related investigations is politically

23    motivated, or . . . [a] personal vendetta by Defendants," (Compl.

24    § 18), contradicts a plausible inference that Defendants acted

25    with any discriminatory intent or motive during the homicide

26    investigation. Further, Plaintiffs' allegation that "Defendant

27    Bunch came to believe [Plaintiff] Singh was involved in the

28    murder," (Compl. ¶ 20), contradicts a plausible inference that

1 Defendant Bunch's actual motive was discriminatory. Nor have

2 Plaintiffs plausibly alleged they were intentionally treated

3 differently from other similarly situated people under

4 investigation.

5       Therefore, this portion of each Defendant's dismissal

6 motion is granted.

7       **3.   RICO Conspiracy Claim**

8       Each Defendant seeks dismissal of each Plaintiff's

9 conspiracy claim alleged under RICO, arguing, *inter alia*, the

10 "broad allegation[s] . . . against the individual[ Defendant]s

11 are not sufficient under Rule 8 to . . . put [each Defendant] on

12 notice[] as to what alleged acts of racketeering Plaintiffs claim

13 are at issue." (Mot. 13:1-3.)

14       Plaintiffs have not responded to these dismissal

15 arguments.

16       "To establish a violation of [the RICO conspiracy

17 statute], Plaintiffs must allege either an agreement that is a

18 substantive violation of RICO or that the defendants agreed to

19 commit, or participated in, a violation of two predicate

20 offenses." Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir.

21 2000) (citation omitted). To plausibly allege the substantive

22 elements of RICO, under § 1962(c), plaintiff must allege: "(1)

23 conduct (2) of an enterprise (3) through a pattern (4) of

24 racketeering activity." Rezner v. Bayerische Hypo-Und Vereinsbank

25 AG, 630 F.3d 866, 873 (9th Cir. 2010) (citation and internal

26 quotation marks omitted).

27       Plaintiffs' conclusory assertions are insufficient to

28 plausibly allege a violation of the RICO conspiracy statute,

1   since Plaintiffs fail to plausibly allege the substantive

2   elements of a RICO claim or violation of two predicate offenses.

3           Therefore, each Plaintiff's RICO conspiracy claim is

4   dismissed against all Defendants.

5                   **4.   Negligent Interference with Contract Claim**

6           Defendants Fladager, Bunch, and Harris seek dismissal

7   of Plaintiffs' negligent interference with contract claim,

8   arguing Plaintiffs fail to plausibly allege this claim. (Mot.

9   5:12-14, 10:22-24.) However, "[i]n California there is no [claim]

10  for negligent interference with contractual relations." Davis v.

11  Nadrich, 174 Cal. App. 4th 1, 9 (2009). Therefore, this claim is

12  dismissed since Plaintiffs have not shown it is viable under

13  California law.

14      **B.   Defendant Fladager**

15          **1.   Official Capacity § 1983 Claims**

16          Defendant Fladager seeks dismissal of Plaintiff Singh's

17  unlawful detention, deliberate indifference, and unlawful search

18  and seizure claims under § 1983 that are alleged against

19  Defendant Fladager in her official capacity as the County's

20  District Attorney, arguing the claims "are precluded [by] the

21  Eleventh Amendment." (Mot. 3:5-7.) She further argues:

22  "Plaintiff[ Singh's] claims against Defendant . . . Fladager in

23  her official capacity are based solely on [Defendant] Fladager's

24  role as a policymaker and her training and supervision of her

25  employees. Defendant[ Fladager] submit[s] that Pitts[ v. County

26  of Kern, 17 Cal. 4th 340 (1998)] and Ninth Circuit precedent

27  following Pitts establishes that Plaintiff[ Singh's] claims

28  against [Defendant] Fladager are barred pursuant to the Eleventh

1   Amendment." (Mot. 5:1–5 (citations omitted)). Plaintiff Singh

2   asks the Court to allow discovery before dismissal on Eleventh

3   Amendment immunity grounds. (Opp'n 1:24–28, 2:1–12.)

4            Plaintiff Singh alleges Defendant Fladager directed the

5   homicide    investigation,    "trained    and    supervised    the

6   [I]nvestigators[,]"    failed    to    conduct    sufficient    training

7   concerning "the constitutional limitations on the use of force

8   and abuse of power," and is responsible for a constitutionally-

9   deficient policy concerning the use of force. (Compl. ¶¶ 3, 16,

10   51–52.)

11            The Eleventh Amendment bars suits for damages against

12   state officials acting in their official capacity, in the absence

13   of the state's consent to suit. Flint v. Dennison, 488 F.3d 816,

14   824–25 (9th Cir. 2007). This bar applies to a district attorney

15   when "the district attorney represents the state, not the

16   county." Pitts, 17 Cal. 4th at 345. "If the District Attorney was

17   a state officer when [s]he engaged in the acts of which [a

18   plaintiff] complains, [s]he is entitled to Eleventh Amendment

19   immunity (to the extent that [s]he is sued in h[er] official

20   capacity) . . . ." Ceballos v. Garcetti, 361 F.3d 1168, 1182 (9th

21   Cir. 2004), rev'd and remanded on other grounds, 547 U.S. 410

22   (2006).

23            Plaintiff    Singh's    conclusory    allegations    are

24   insufficient    to    state    claims    against    Defendant    Fladager

25   notwithstanding whether she represented the state or the County.

26   Therefore, Defendant Fladager's motion to dismiss the § 1983

27   claims, alleged against her in her official capacity, is granted.

28

1        **2.    State Claims**

2            Defendant Fladager also seeks dismissal of Plaintiffs'

3   state claims, arguing Plaintiffs fail "to state any facts that

4   reflect [she] had any direct and personal participation in the

5   events giving rise to Plaintiffs' [state] claims," and that she

6   "is immune from any state claims arising out of any alleged

7   actions taken by other Defendants in this case" under California

8   Government Code section 820.8. (Mot. 5:12-16, 6:3-4.)

9            Plaintiffs do not oppose this portion of the motion.

10           Section 820.8 states in pertinent part: "a public

11  employee is not liable for an injury caused by the act or

12  omission of another person." Plaintiffs have not alleged that

13  Defendant Fladager was personally involved in any alleged state

14  claim, or any facts plausibly exposing her to liability for the

15  alleged acts of her subordinates. See <u>Milton v. Nelson</u>, 527 F.2d

16  1158, 1159 (9th Cir. 1975) ("[S]upervisory personnel whose

17  personal involvement is not alleged may not be held responsible

18  for the acts of their subordinates under California law.").

19  Therefore, Defendant Fladager's motion to dismiss Plaintiffs'

20  state claims is granted.

21  **C.   County: § 1983 Claims**

22           The County seeks dismissal of Plaintiff Singh's

23  unlawful detention, deliberate indifference, and unlawful search

24  and seizure claims, arguing:

25           Plaintiffs base their claim against the
             County by asserting Defendant Fladager is the
26           policymaker for the County . . . .
             Since . . . it is well established that
27           district attorneys of California in their
             official capacities are arms of the State,
28           then District Attorney Fladager cannot

                                14

> represent the County . . . when setting policy for her department, and when establishing policy in training of her employees in these areas. Thus, because [Defendant] Fladager's policy-making actions are not attributable the County . . ., the County is an improper party to this case. Moreover, as there is no other policy related allegations save that arise from Defendant Fladager, the County should be dismissed.

(Mot. 7:4-12 (citation omitted).)

Plaintiff Singh's allegations germane to his claim against the County allege: "[The] C[ounty] is sued for the challenged delegated final decisions of Defendant F[ladager] in her official capacity as the District Attorney for the C[ounty], and for . . . final delegated decision makers, with respect to the . . . challenged deliberately indifferent policies, decisions, widespread habits, customs, usages, and practices." (Compl. ¶ 6.)

Plaintiff Singh further alleges in pertinent part:

> It is the longstanding, widespread, and deliberately indifferent custom, habit, practice and/or policy of County, [Defendant] Fladagar, and [Defendant] Harris to permit Investigators to use excessive force, outrageous tactics, and tortuous activity against individuals when such use is unnecessary and unjustified, as well as failing to supervise and to train investigators in the appropriate constitutional limits on the use of force and techniques, knowing that these members of law enforcement therefore pose a significant risk of injury to the public.

(Compl. ¶ 52.)

"A municipality or other local government entity . . . may be sued for constitutional torts committed by its officials according to an official policy, practice, or custom." Cortez v. Cnty. of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002) (citing

15

1  <u>Monell v. N.Y. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690–91

2  (1978)). "To hold a local government liable for an official's

3  conduct, a plaintiff must . . . [allege] that the official [whose

4  action is ascribed to the County] (1) had final policymaking

5  authority concerning the action alleged to have caused the

6  particular constitutional or statutory violation at issue and (2)

7  was the policymaker for the local governing body for the purposes

8  of the particular act." <u>Id.</u> (citation and internal quotation

9  marks omitted).

10      Plaintiff Singh's allegations do not plausibly allege

11  Defendant Fladager was a policymaker for the County. Further,

12  "the court need not accept as true conclusory allegations, nor

13  make unwarranted deductions or unreasonable inferences." <u>In re

14  Gilead Sciences Secs. Litig.</u>, 536 F.3d at 1057. Therefore, the

15  County's dismissal motion is also granted.

16      **D.   Sheriff Christianson: Official Capacity § 1983 Claims**

17      Sheriff Christianson moves for dismissal of the

18  official capacity claims against him, arguing he is an improper

19  party in the lawsuit because he "is sued in his official capacity

20  only." (Mot. 6:19 n.1.) Plaintiff Singh does not oppose this

21  portion of the motion.

22      The Supreme Court has held that "an official-capacity

23  suit [seeking to recover damages] is, in all respects other than

24  name, to be treated as a suit against the entity." <u>Kentucky v.

25  Graham</u>, 473 U.S. 159, 166 (1985). Such a suit "is <u>not</u> a suit

26  against the official personally, for the real party in interest

27  is the entity." <u>Id.</u>; <u>Butler v. Elle</u>, 281 F.3d 1014, 1023 n.8 (9th

28  Cir. 2002) ("Section 1983 [damages] claims against government

16

officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded.").

Therefore, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). Here, the Sheriff's Department is a named defendant and Sheriff Christianson is the Sheriff's Department employee. (See Compl. ¶ 8 (alleging Sheriff Christianson is "the head of the Stanislaus County Sheriff's office").) Therefore, Plaintiff Singh's damages claims against Sheriff Christianson in his official capacity are therefore dismissed.

### E.   Sheriff's Department: Section 1983 Claims

The Sheriff's Department seeks dismissal of Plaintiff Singh's unlawful detention, deliberate indifference, and unlawful search and seizure claims, contending, *inter alia*, it is not subject to suit since a municipality department is not considered a "person" subject to suit for constitutional violations under § 1983, and because it is an improperly named party. (Mot. 7:18-26.) It further asserts: "It is axiomatic that the Stanislaus County Sheriff's Department is not a separate, distinct legal entity apart from the C[ounty], but instead is just a department within the County." (Mot. 7:20-22.)

Plaintiff Singh does not oppose the Sheriff's Department's motion. Plaintiff Singh alleges the "Sheriff's

17

1    Department w[as] involved in a joint task force investigating the
2    crime." (Compl. ¶ 20.)

3          The Sheriff's Department cites <u>Vance v. County of Santa</u>
4    <u>Clara</u>, 928 F. Supp. 993, 996 (N.D. Cal. 1996), for the
5    proposition that "municipal departments are not persons under
6    [§] 1983[]." (Mot. 7:19-20.) However, the Ninth Circuit has
7    "unequivocally held that when a California sheriff's department
8    performs the function of conducting criminal investigations, it
9    is a county actor subject to suit under § 1983." <u>Jackson v.</u>
10   <u>Barnes</u>, 749 F.3d 755, 764 (9th Cir. 2014) (citations omitted).
11   However, Plaintiff Singh's vague and conclusory allegation fail
12   to plausibly allege what function the Sheriff's Department
13   performed subjecting it to liability. Therefore, this portion of
14   the dismissal motion is granted.

15        **F.    Defendants Harris and Bunch: "Section 1983" claim**

16         Defendants Harris and Bunch each seek dismissal of each
17   Plaintiff's "§ 1983" claim, arguing "Plaintiffs do not . . .
18   identify a specific [c]onstitutional provision." (Mot. 10:6.)

19         "[Section] 1983 is not itself a source of substantive
20   rights, but merely provides a method for vindicating federal
21   rights elsewhere conferred." <u>Graham v. Connor</u>, 490 U.S. 386, 393-
22   94 (1989) (citations and internal quotation marks omitted). In
23   their First Claim, Plaintiffs assert legal conclusions devoid of
24   factual matter, and they "fail to explain in their [O]pposition
25   [brief] how their First [Claim] differs from their [remaining
26   claims]." <u>Fontana</u>, 750 F. Supp. 2d at 1155. "It appears to this
27   Court that Plaintiffs have identically pled [multiple] claims for
28   relief: one for violation of their rights under [§] 1983 and the

[remaining claims] for violations of their rights under the Fourth . . . and Fourteenth Amendments." Id. Since each Plaintiff's "§ 1983" claim "is duplicative and fails as a matter of law," id., this portion of the dismissal motion is granted.

### G. Defendant Harris

#### 1. Remaining § 1983 Claims: Unlawful Detention, "Deliberate Indifference," and Unlawful Search and Seizure Claims

Defendant Harris seeks dismissal of Plaintiff Singh's § 1983 claims alleged against him, arguing the allegations against him are vague, conclusory, and fail to sufficiently allege causation. (See Mot. 9:11–23.)

"Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further:

> A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [a plaintiff complains]. The inquiry into causation must be individualized and focus[ed] on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.

Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (alteration in original) (citation and internal quotation marks omitted).

Plaintiff Singh alleges Defendant Harris trained and supervised Investigators; co-led the homicide investigation; made statements to Plaintiff Singh's lawyer; and is responsible for a

constitutionally-deficient policy, along with the County and Defendant Fladager. (Compl. ¶¶ 4, 16, 46, 51, 52.) However, Plaintiff Singh fails to plausibly allege affirmative acts committed by Defendant Harris that caused the referenced, alleged constitutional deprivations. Accordingly, Defendant Harris's motion to dismiss Plaintiff Singh's § 1983 claims alleged against him is granted.

### 2. State Claims

Defendant Harris also seeks dismissal of Plaintiffs' state claims, arguing, "Plaintiffs . . . fail to plead . . . facts . . . support[ing] th[ose] . . . claims." (Mot. 10:22-23.) He further argues California Government Code section 820.8 "precludes imposition of any liability against . . . [him] for actions undertaken by others," in which any state claim could be based. (Mot. 11:2-3.)

Plaintiffs do not plausibly allege facts supporting any state claim against Defendant Harris and have not shown he is liable for the alleged acts of another person, in light of section 820.8's rule precluding his liability based on "the act or omission of another person." Cal. Gov't Code § 820.8. Therefore, this portion of the dismissal motion is granted.

### H. Defendant Bunch

### 1. Remaining § 1983 Claims: Unlawful Detention, "Deliberate Indifference," and Unlawful Search and Seizure Claims

Defendant Bunch seeks dismissal of Plaintiff Singh's § 1983 claims, arguing, *inter alia*, the allegations against him

are vague, conclusory, and fail to sufficiently allege causation. (Mot. 9:11-23.)

### a.   Unlawful detention claim

Defendant Bunch seeks dismissal of Plaintiff Singh's unlawful detention claim, arguing Plaintiff Singh "fail[s] to state any defendant actually arrested him or caused the arrest," (Mot. 10:7-8), "do[es] not identify which agency arrested [Plaintiff Singh] on any occasion," (Mot. 9:26-27), and "fail[s] to allege Defendant Bunch . . . had any role in [his] alleged delay in release from jail after [Plaintiff Singh] post[ed] bail." (Mot. 10:11-12.)

Plaintiff Singh alleges in the Complaint: "Defendants deprived Plaintiff [Singh] of his property and liberty interests when he was unlawfully arrested and jailed without probable cause[,]" (Compl. ¶ 70), and since he "was not timely released" after he posted bail. (Compl. ¶ 71.)

Plaintiff Singh's "[v]ague and conclusory allegations of [Defendant Bunch's] participation in [these alleged] violations are not sufficient to withstand a motion to dismiss." Ivey, 673 F.2d at 268. The Complaint lacks factual allegations plausibly showing that Defendant Bunch participated in Plaintiff Singh's arrests, subsequent jailing, and alleged untimely release from jail.

Therefore, Defendant Bunch's motion to dismiss Plaintiff Singh's unlawful detention claim is granted.

### b.   "Deliberate indifference" claim

Defendant Bunch seeks dismissal of Plaintiff Singh's deliberate indifference claim, in which conditions of Plaintiff

21

Singh's jail confinement are challenged. Defendant Bunch argues, "Plaintiff[] [Singh] appear[s] to claim his life was placed in danger in . . . jail, . . . but fails to state any individual defendant made any statements to place him in danger." (Mot. 10:12-14.) Defendant Bunch also argues "Plaintiff Singh appears to admit he complained [to a guard] about being in danger and was moved" and that this admission "render[s] the . . . [c]laim without bases" for challenging this referenced jail confinement. (Mot. 10:14-16.)

Plaintiff Singh alleges in his Complaint that while in jail around Thanksgiving Day, "[a] gang member told [Plaintiff] Singh that [Defendant] Bunch told them that [Plaintiff] Singh was a 'snitch' . . . . [and that] [b]ecause of this accusation . . . several members threatened [Plaintiff] Singh with his life." (Compl. ¶ 37.)

Since Plaintiff Singh alleges in the Complaint that he "was a pretrial detainee, his right to be free from violence at the hands of other inmates arises from the Fourteenth Amendment rather than the Eighth Amendment." Castro v. Cnty. of Los Angeles, 797 F.3d 654, 664 (9th Cir. 2015). "Despite those different constitutional sources, the 'deliberate indifference' test is the same for pretrial detainees and for convicted prisoners." Id. (citation omitted). In Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989), the Ninth Circuit held a prisoner stated a claim under § 1983 where an inmate alleged that on a particular date, "he was approached by fellow prisoners and threatened with harm because [prison officials] had told other inmates in the law library that [plaintiff] was a snitch."

1   Defendant Bunch has not shown that Plaintiff Singh's
2   allegations fail to plausibly state the challenged claim.
3   Therefore, this portion of Defendant Bunch's motion is denied.

### c.   Unlawful search and seizure claim

5   Defendant Bunch seeks dismissal of Plaintiff Singh's
6   unlawful search and seizure claim, which is based on Defendant
7   Bunch's conduct during the investigation, arguing Plaintiff Singh
8   does not plausibly allege a "claim under the Fourth or Fourteenth
9   Amendments as a matter of law." (Mot. 10:16-19.) Plaintiff Singh
10  alleges, "Defendants arrested [him] without probable cause, and
11  seized his property without probable cause." (Compl. ¶ 78.) He
12  further alleges in pertinent part: Investigators searched
13  Plaintiff Karan's real estate brokerage and seized property
14  therein. (Compl. ¶ 44.)

15  However, the Complaint lacks factual allegations
16  plausibly showing that Defendant Bunch participated in Plaintiff
17  Singh's arrests. Further, Plaintiff Singh fails to identify what
18  property he owned that Defendant Bunch allegedly seized; instead,
19  he alleges Investigators seized Plaintiff Karan's property from
20  her real estate brokerage. (Compl. ¶ 43.) Therefore, this portion
21  of the dismissal motion is granted.

### 2.   State Claims: California Government Code Section 945.3

24  Defendant Bunch seeks dismissal of Plaintiff Singh's
25  state claims alleged against him, arguing that under California
26  Government Code Section 945.3, "all state . . . claims arising
27  out of [Plaintiff Singh's pending criminal matters] . . . may not
28  be pursued at this time." (Mot. 13:25, 14:13-14.) Plaintiff Singh

opposes, arguing Defendant Bunch's conduct "was related to matters outside the criminal proceedings against [him]." (Opp'n 5:2-3.)

Section 945.3 states in pertinent part: "No person . . . charg[ed with] a criminal offense may bring a civil action based upon conduct of the peace officer relating to the offense for which the accused is charged . . . ." Here, Plaintiff Singh alleges Defendant Bunch's conduct related to the homicide investigation, and Plaintiff Singh has not been charged with the homicide. (Compl. ¶¶ 15-16.) In light of these allegations, Plaintiff Singh's state claims against Defendant Bunch are not barred by section 945.3.[5]

### 3.   State Claims: Factual Sufficiency

Additionally, Defendant Bunch argues, *inter alia*, Plaintiffs' state claims fail, arguing that "Plaintiffs . . . fail to plead . . . facts . . . support[ing] their state . . . claims against [Defendant] Bunch." (Mot. 10:22-23.) He further argues, "Plaintiffs plead that 'Investigators' undertook the actions of which they complain but Plaintiffs do not identify any specific actions by . . . [Defendant] Bunch . . . that would support the existence of any of the[ state] claims." (Mot. 10:27-28.)

---

[5]   Defendants request judicial notice of three Case Information sheets, concerning criminal matters pending against Plaintiff Singh. (Req. Judicial Notice, ECF No. 8-2; Mot. 14:9.) The Court takes notice of these sheets. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (holding the court may take judicial notice of proceedings in other courts); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (holding the court "may take judicial notice of matters of public record outside the pleadings"). The Case Information sheets do not show Plaintiff Singh has been charged with the homicide.

1

### a.   Defamation claim

2          Defendant Bunch seeks dismissal of each Plaintiff's

3     defamation claim alleged against him. Defamation "allegations are

4     insufficient i[f] . . . they are ascribed to defendants

5     collectively rather than to individual defendants." Arikat v. JP

6     Morgan Chase & Co., 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006).

7     "While the exact words or circumstances of the slander need not

8     be alleged to state a claim for defamation, the substance of the

9     defamatory statement must be alleged." Silicon Knights, Inc. v.

10    Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D. Cal. 1997)

11    (citation omitted). "Even under liberal federal pleading

12    standards, 'general allegations of the defamatory statements'

13    which do not identify the substance of what was said are

14    insufficient." Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198,

15    1216 (C.D. Cal. 2004).

16         Plaintiffs' allegations ascribed to Defendant Bunch are

17    that he told family and friends Plaintiff Singh "is a murderer,"

18    "a pimp," and "runs some sort of a prostitution ring"; Plaintiffs

19    also allege he told gang members Plaintiff Singh was a "snitch."

20    (Compl. ¶¶ 23, 37.)

21         Defendant Bunch has not shown that Plaintiff Singh's

22    allegations are insufficient to allege a defamation claim;

23    therefore, this portion of Defendant Bunch's motion is denied.

24    Plaintiff Karan, however, has only stated conclusory allegations

25    that fail to state a claim against Defendant Bunch, and

26    therefore, this portion of his motion is granted.

27

28

### b.   Tortious interference with contract (intentional interference with contractual relations) claim

Defendant Bunch seeks dismissal of Plaintiffs' claim for tortious interference with contract. Plaintiffs allege: (1) they had a pending transaction in the "escrow stage" with Stewart Title, a third party, (Compl. ¶¶ 47, 49); (2) "Investigators discovered that [Plaintiff] Singh stood to benefit from [the] pending transaction," (Compl. ¶ 47); (3) "[Plaintiff] Singh was referred to as a 'murderer' to Stewart Title personnel," (id.); "Investigators did this . . . with the goal that it would harm [Plaintiff] Singh financially," (id.); (4) "Stewart Title did in fact stop doing business with [Plaintiffs] because of the actions of Defendants," (Compl. ¶ 49); and (5) the property buyer dropped out, escrow dropped out, and the property has decreased in value. (Id.)

The California Supreme Court has held:

> The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (citations omitted).

Plaintiffs fail to allege a valid contract, as they merely allege they had "a pending transaction" in the "escrow stage" with a third party, Stewart Title. (Compl. ¶¶ 47, 49.)

Accordingly, Plaintiffs fail to state a claim for tortious interference with contract, and therefore this portion of Defendant Bunch's motion is granted.

### c. Tortious and negligent interference with (prospective) economic advantage claims

Defendant Bunch seeks dismissal of Plaintiffs' tortious and negligent interference with prospective economic advantage claims. Plaintiffs allege in the Complaint, *inter alia*: "Defendants . . . knew of Plaintiffs ongoing business and business relationships with buyers, sellers, title and escrow companies, with which Plaintiffs conducted real estate transactions, and knew of Plaintiffs other prospective business." (Compl. ¶¶ 128, 134.)

To plead a claim for tortious, i.e., intentional, interference with prospective economic advantage, a plaintiff must allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Youst v. Longo, 43 Cal. 3d 64, 71 n.6 (1987).

Further, to plead the tort of negligent interference with prospective economic advantage, a plaintiff must allege:

> (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have

27

been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

N. Am. Chem. Co. v. Superior Court, 59 Cal. App. 4th 764, 786 (1997).

Plaintiff's conclusory allegations do not allege a prospective, or future, economic relationship with Stewart Title or other third parties. Further, as to the negligent form of the tort, Plaintiffs fail to allege that Defendant Bunch owed them a duty of care.

Therefore, Defendant Bunch's motions to dismiss these claims are granted.

### d.    Intentional infliction of emotional distress claim

Defendant Bunch seeks dismissal of Plaintiffs' intentional infliction of emotional distress claim.

Plaintiffs allege "[t]he unlawful harassment, retaliation, deprivation of rights, and conduct towards Plaintiffs . . . constitute extreme and outrageous conduct." (Compl. ¶ 140.) Plaintiffs further allege they "have suffered and will continue to suffer mental distress and anguish, and loss of consortium." (Compl. ¶ 144.)

Specifically, Plaintiffs allege Defendant Bunch told Plaintiff Karan, "If you don't stay away [from Plaintiff Singh], I will come and take your kids away and put them in foster care."

28

1  (Compl. ¶ 26 (alteration in original).) At the time, Plaintiffs

2  had one child, and Plaintiff Karan was five-months pregnant.

3  Plaintiffs further allege "[t]he birth had complications due to

4  the stress suffered by [Plaintiff] Karan, from [Plaintiff] Singh

5  being in jail . . ., together with the threats by [Defendant]

6  Bunch." (Compl. ¶ 41.)

7        "A cause of action for intentional infliction of

8  emotional distress exists when there is (1) extreme and

9  outrageous conduct by the defendant with the intention of

10  causing, or reckless disregard of the probability of causing,

11  emotional distress; (2) the plaintiff's suffering severe or

12  extreme emotional distress; and (3) actual and proximate

13  causation of the emotional distress by the defendant's outrageous

14  conduct. A defendant's conduct is outrageous when it is so

15  extreme as to exceed all bounds of that usually tolerated in a

16  civilized community." Hughes v. Pair, 46 Cal. 4th 1035, 1051

17  (2009) (citations and internal quotation marks omitted).

18        Defendant Bunch has provided no authority evincing that

19  Plaintiff Karan's allegations are factually insufficient;

20  therefore, his motion is denied. Plaintiff Singh, however, has

21  only stated conclusory allegations that fail to state a plausible

22  claim against Defendant Bunch, and therefore Defendant Bunch's

23  motion to dismiss Plaintiff Singh's claim is granted.

24        **e.   Negligent infliction of emotional distress**

25             **claim**

26        Defendant Bunch also seeks dismissal of Plaintiffs'

27  negligent infliction of emotional distress claim alleged against

28  him. "The law of negligent infliction of emotional distress in

1  California is typically analyzed . . . by reference to two
2  'theories' of recovery: the 'bystander' theory and the 'direct
3  victim' theory." Burgess v. Superior Court, 2 Cal. 4th 1064, 1071
4  (1992).

5          "To recover damages for emotional distress, absent
6  physical injury, in a 'bystander case' the plaintiff must be: (1)
7  Closely related to the injury victim; (2) Present at the scene of
8  the injury-producing event at the time it occurs and is then
9  aware that it is causing injury to the victim; and (3) Suffer
10 emotional distress as a result, beyond that which would occur in
11 a disinterested witness." Megargee ex rel. Lopez v. Wittman, No.
12 CVF 06-0684 AWILJO, 2006 WL 2988945, at *16 (E.D. Cal. Oct. 17,
13 2006) (citing Martin By and Through Martin v. United States, 984
14 F.2d 1033, 1037 (9th Cir. 1992)). Plaintiffs here have not
15 alleged their contemporaneous presence or resulting emotional
16 distress.

17         In direct victim cases, "a cause of action to recover
18 damages for negligently inflicted emotional distress will
19 lie . . . where a duty arising from a preexisting relationship is
20 negligently breached." Burgess, 2 Cal. 4th at 1074; see also
21 Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.
22 3d 583, 588 (1989) ("[The] negligent causing of emotional
23 distress is not an independent tort but the tort of
24 negligence . . . . The traditional elements of duty, breach of
25 duty, causation, and damages apply." (alteration in original)
26 (internal citation omitted)). Plaintiffs do not allege a duty
27 arising from a preexisting relationship.

28

1        For the stated reasons, this portion of Defendant

2   Bunch's dismissal motion is granted.

3   **I.   Motion for a More Definite Statement**

4        Defendants Bunch and Harris move in the alternative

5   under Rule 12(e) for a more definite statement of the claims

6   against them, arguing they have to speculate as to which

7   allegations are relevant to each Defendant. (Mot. 14:19-28.) This

8   motion is denied since Plaintiffs' allegations are not "so vague

9   or ambiguous that the party cannot reasonably prepare a

10  response." Fed. R. Civ. P. 12(e).

11                     **IV.   CONCLUSION**

12       For the stated reasons, Defendants' motion dismiss is

13  GRANTED in part and DENIED in part. Plaintiffs have fourteen days

14  from the date on which this Order is filed to file an amended

15  complaint addressing deficiencies in any dismissed claim.

16  Dated:  January 6, 2016

17

18                                       _____

19                              GARLAND E. BURRELL, JR.
                                Senior United States District Judge

20

21

22

23

24

25

26

27

28