UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRAVEEN SINGH, an individual; JOYTESHNA KARAN, an individual, | No. 1:15-cv-00646-DAD-BAM |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| KIRK BUNCH, an individual; FRANK NAVARRO, an individual; JOHN EVERS, an individual, DAVID HARRIS; BIRGIT FLADAGER; THE COUNTY OF STANISLAUS, a government entity; ADAM CHRISTIANSON; STANISLAUS COUNTY SHERIFF DEPARTMENT, a government entity; and DOES 1–10, inclusive, | (Doc. No. 33) |
| Defendants. | |

Plaintiffs Praveen Singh and Joyteshna Karan initiated this action by filing their complaint

on April 27, 2015.  (Doc. No. 1.)  On July 1, 2015, defendants County of Stanislaus (the

"County"), Stanislaus County Sheriff Department (the "Sherriff's Department"), Stanislaus

County District Attorney Birgit Fladager, Stanislaus County Sheriff Adam Christianson,

Stanislaus County Chief Deputy District Attorney David Harris, and Stanislaus County District

Attorney's Office investigator Kirk Bunch (collectively, the "moving defendants") moved to

dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 15.)  On

January 7, 2015, U.S. District Judge Garland E. Burrell, Jr., to whom this case was previously

1    assigned, granted the defendants' motion to dismiss in part and also granted plaintiffs leave to file

2    an amended complaint.  (Doc. No. 27.)  In that order, the court also found that plaintiff Singh had

3    stated cognizable claims for defamation and "deliberate indifference" under 42 U.S.C. § 1983

4    against defendant Bunch and that plaintiff Karan had stated a cognizable claim for intentional

5    infliction of emotional distress claim also against defendant Bunch.  (*Id.*)

6          On January 22, 2016, plaintiffs timely filed their first amended complaint (FAC).  (Doc.

7    No. 31.)[1]  On February 8, 2016, the moving defendants again filed a motion to dismiss aimed at

8    many, but not all, of the claims alleged by plaintiffs in their FAC.  (Doc. No. 33.)[2]  On February

9    29, 2016, the case was re-assigned to the undersigned.  On April 19, 2016, this court heard oral

10   arguments on the pending motion to dismiss.  Attorney John Whitefleet appeared telephonically

11   at the hearing on behalf of the moving defendants.  Attorney Alejandro Herrera appeared

12   telephonically on behalf of plaintiffs.

13         For the reasons explained below, the court will grant the moving defendants' motion to

14   dismiss in part and deny it in part.

15   ### ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

16         In their wide-ranging and somewhat convoluted FAC[3], plaintiffs essentially allege that in

17   connection with a homicide investigation they have been targeted and subjected to abusive and

---

18
19   [1]  Plaintiffs failed to designate the amended complaint as such.  Nonetheless, the court will refer
     to the operative pleading as the FAC in this order.

20   [2]  Defendants Frank Navarro, John Evers, Doe Sherriff #1, and Doe Sherriff #2 have not appeared
21   in this action.

22   [3]  The court finds it odd, for instance, that after failing to raise any opposition to the dismissal of
     certain claims in response to the first motion to dismiss, plaintiffs have re-alleged those same
23   claims in their FAC and, once again, presented no opposition to their dismissal in response to the
     pending motion.  Plaintiffs' opposition to the pending motion is just as perplexing.  (See Doc. No.
24   36.)  It is devoted primarily to arguments regarding the need for discovery, seeking further leave
     to amend if the allegations of the FAC are found to be deficient and addressing arguments not
25   advanced by defendants, rather than addressing any of the specific grounds for dismissal raised by
     the pending motion.  The deficiencies of plaintiffs' original complaint have been carefully
26   explained to them by the court's first dismissal order.  Plaintiffs have already been granted leave
     to amend and, in part, have failed to cure the deficiencies in their original complaint.  Where such
27   is the case, granting further leave to amend at this stage of the litigation would be futile.  *See*
     *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

28

1   unlawful law enforcement actions by the defendants due to their national origin, political

2   purposes, personal vendetta and/or a combination of the three.  Specifically, plaintiffs' FAC

3   alleges essentially as follows.  Since early 2013, plaintiff Singh "has been the subject of an

4   erroneous and malicious investigation related to the homicide of Korey Kauffman."[4]  (Doc. No.

5   31 at 4.)  District Attorney Fladager, Chief Deputy District Attorney Harris, and District Attorney

6   Investigator Bunch led the investigation.  (*Id*. at 5:1–3.)[5]  Officers from the Turlock, Modesto,

7   and Ceres Police Departments, CDCR, and the Stanislaus County Sheriff's Department were also

8   involved in the joint task force investigation of the homicide. (*Id*. at 6:11–14.)

9        At some point in this investigation, defendant Bunch came to believe plaintiff Singh was

10   involved in the murder.  (*Id*. at 6.)  According to plaintiffs, this belief was driven by defendant

11   Bunch's "malicious and predisposed view of the Indian community" and investigators[6] have

12   bullied plaintiff Singh and the Indian' community in general, harassing over 100 of its members.

13   (*Id*.)  In mid-2013, Bunch asked Singh to come to the District Attorney's office to "talk."  (*Id*.)

14   Defendant Bunch "aggressively" urged Singh, a private investigator, to disclose information he

15   had obtained from a privileged jailhouse interview and "angrily shifted the subject when Singh

16   refused to disclose the privileged information," stating "'Big Daddy [Frank Carson] is going to

17   throw you under the bus, so you should help yourself and your family. . . . are you sure you want

18   to go to prison . . . I'll make sure you never see the daylight.'"  (*Id*.)

19        Prior to September 6, 2013, a "confidential witness" who had been hired by defendant

20   Bunch" called Singh and attempted to induce him to talk about the homicide.  (*Id*. at 7.)

---

21   [4]  Robert Lee Woody has since been arrested and charged with the murder of Korey Kauffman.
22   In addition, on August 14, 2015, Modesto attorney Frank Carson, who had employed plaintiff
    Singh as a private investigator at times, and eight others, including three California Highway
23   Patrol officers were also arrested for their suspected involvement in the death of Korey
    Kauffman.  (Doc. No. 31 at 5, n.2–3.)
24
25   [5]  According to plaintiffs, "It appears the . . . investigation . . . is politically motivated and racially
    motivated, or possibly another personal vendetta by Defendants.  Indeed, this and the related
26   investigations involve other members of the Indian community, and the same non-Indian
    Defendants."  (*Id*. at 5.)
27
28   [6]  In their complaint, plaintiffs refer to defendants Bunch, Frank Navarro, and John Evers
    collectively as the "Investigators."  (*Id*. at 4.)

"Although Singh had nothing to offer . . ., he . . . cooperated with Investigators." (*Id*. at 8.)  On October 2, 2013, Singh sat for a polygraph examination.  (*Id*.)  Thereafter, the investigators threatened Singh's friends and family, accusing Singh of being a murderer and of running a prostitution ring." (*Id*.)  "Singh's friends were threatened by Investigators to 'get away from Singh' because 'he is a murderer' and 'a pimp.'" (*Id*. at 8.)

On September 13, 2013, plaintiff Karan voluntarily came to the District Attorney's Office to speak about the homicide investigation.  (*Id*. at 9.)  "At this time, Singh and Karan were the parents of one child, and Karan was [five-months] pregnant with a second child . . . ." (*Id*.)  Although Karan fully cooperated, she was nonetheless threatened by the defendant investigators with an investigation of herself for real estate fraud if she didn't "give them what they wanted" which she took as meaning "information incriminating Singh." (*Id*.)  Defendant Bunch told Karan, "If you don't stay away [from Singh], I will come and take your kids away and put them in foster care," and "I will investigate you and take your children away." (*Id*.)

Two weeks after the body of Korey Kauffman was found, on October 29, 2013, defendant Bunch arrested Singh for violation of California Insurance Code § 1814 even though a violation of that provision had only once before resulted in an arrest.  (*Id*. at 10.)  Singh was then taken to the District Attorney's office where he was questioned for two hours by defendants Bunch and Evers about the Kauffman homicide rather than the charge for which he had been arrested.  (*Id*.)

Although Singh posted bail, he was not timely released from jail but instead was housed with members of the Northern Ryders gang.  (*Id*.)  Defendant Bunch "attempted to 'set up' Singh with these gang members by listening in on conversations." (*Id*.)  Singh informed Doe Sheriff #1 of the danger of him being placed into a cell or area with Northern Ryders and Doe Sheriff #1 responded by stating, "That's your [Singh's] problem." (*Id*. at 11.)  Although Singh's bail bond was posted at about 10:00 p.m., he was not released until 4:00 a.m.  (*Id*. at 10.)

On or about November 11, 2013, Singh contacted defendant Bunch and asked him "What do you want from me?'" (*Id*. at 11.) "Bunch replied, 'If you don't bring me the murder weapon, I'm going to arrest you.'"(*Id*.)

/////

4

On November 27, 2013, plaintiff Singh was again arrested on different charges, again unrelated to the Kauffman homicide.  (*Id*. at 11.)  This time investigators placed a hold on him preventing his release on bail.  (*Id*. at 12.)  During the booking process, Singh told defendants Bunch, Evers, and Doe Sheriff #2 of the dangers of placing him into a cell or area with Northern Ryders gang members as had occurred following his earlier arrest.  (*Id*.)  "Doe[] Sherriff #2 responded by stating to Singh, 'You're going to go where we put you.  You don't have a choice.'" (*Id*.)  Doe Sheriff #2 then moved Singh into a cell with Northern Ryders gang members.  (*Id*.) After a neighboring inmate told those in Singh's cell that Singh was a snitch, Singh was attacked by his cellmates and punched several times before jail guards arrived.  (*Id*. at 13.)  "After Singh was released, a gang member told Singh that it was Bunch who told them that Singh was a 'snitch' . . ."  (*Id*.)  On December 2, 2013, "Karan delivered her child."  (*Id*.at 13.)  Complications were associated with the birth due to the stress suffered by Karan as a result of Singh being jailed and the threats made by defendant Bunch.  (*Id*. at 14.)

On February 27, 2014, Singh was arrested yet again, this time for violation of Welfare and Institutions Code § 14107(b)(4)(a).  (*Id*.)  Before his arrest, Singh gave defendant Bunch, upon his request, the keys to plaintiff Karan's Royal Royalty real estate office.  (*Id*.)  Investigators searched the office files and computers, seizing real estate document files, computers, and printers as well as plaintiff Singh's cell phones and GPS devices.  (*Id*.)  Thereafter, Singh was questioned once again about the homicide by investigators.  (*Id*.)

On or about April 2, 2014, investigators put Stewart Title, a title company used by Royal Realty, on notice of the homicide investigation in an attempt to convince Stewart Title not to do business with Royal Realty, Karan, and Singh as customers.  (*Id*. at 16.)  Because of defendants' actions, "Stewart Title did in fact stop doing business with Karan and Singh."  (*Id*.)

According to plaintiffs, the County, defendant Fladager, and defendant Harris have initiated policies that include: (1) failing to train on "constitutional limits on the use of force and abuse of power;" (2) failing to punish unconstitutional use of force; (3) tolerating unconstitutional use of force; (4) failing to investigate citizen complaints; (5) tolerating collusive statements; (6) permitting outrageous tactics and tortuous activity; and (7) failing to supervise those involved in

5

1   the investigation.  (*Id*. at 16.)  Plaintiffs also allege that these three defendants have encouraged,

2   tolerated, ratified, and acquiesced to the conduct about which plaintiff complain.  (*Id*.)

3                                              LEGAL STANDARD

4           The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

5   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

6   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

7   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

8   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

9   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

10  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

11  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

12  Iqbal*, 556 U.S. 662, 678 (2009).

13          In determining whether a complaint states a claim on which relief may be granted, the

14  court accepts as true the allegations in the complaint and construes the allegations in the light

15  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

16  United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

17  stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519,

18  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

19  form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th

20  Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

21  an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

22  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

23  elements of a cause of action."  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 676

24  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

25  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

26  facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

27  not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

28  459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**DISCUSSION**

**A.  Claims Brought Against All Defendants**

      *a.  Fifth Claim For Relief: Racial Discrimination in Violation of the Fourteenth Amendment's Equal Protection Clause*

Defendants seek dismissal of plaintiffs' racial discrimination claim, which plaintiffs have jointly alleged under the Fourteenth Amendment's Equal Protection Clause.  In moving to dismiss this claim defendants note that the court previously found the allegations of plaintiffs' original complaint insufficient to state such a claim and argue that plaintiffs have not alleged any additional facts in their FAC which would suggest that they were treated differently from other similarly situated persons under investigation.  (Doc. No. 33 at 23.)  The court is not persuaded by defendants' argument.

In its January 7, 2016, order dismissing this claim with leave to amend the court stated as follows:

> "To state a claim for violation of the Equal Protection Clause, a plaintiff must [allege] that the defendant acted with an intent or purpose to discriminate against [plaintiff] based upon [plaintiff's] membership in a protected class[,]" *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted), or "that [plaintiff] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Further, "a long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995).
>
> Plaintiffs plead facts from which it can be inferred that they are of Indian origin. [citation omitted.]  *See Reedy v. Precyse Solutions LLC*, No. 1:12-CV-02061-AWI, 2013 WL 1563254, at *6 (E.D. Cal. Apr. 12, 2013) ("As a person of . . . Indian origin, Plaintiff is a member of a protected class.")

(Doc. No. 27 at 10.)  However, the court found that the allegations of plaintiffs' original

7

1   complaint were - with respect to intent - conclusory, contradictory and did not plausibly allege

2   that defendants acted with the intent to discriminate against plaintiffs based upon their national

3   origin and membership in a protected class.  (*Id*. at 1011.)

4          While by no means a model pleading, the FAC adequately addresses the previously noted

5   deficiencies.  The FAC sufficiently alleges that defendants acted with an intent or purpose to

6   discriminate against plaintiffs based upon their membership in a protected class.  In their FAC

7   plaintiffs allege they were subjected to "racially motivated arrests, searches, and seizures."  (Doc.

8   No. 31 at 22:16–18.)  They further allege "race was a motivating factor in the decision to use

9   excessive force[ and] maliciously prosecute Plaintiff, and [that these actions were] undertaken

10  with the purpose of depriving Plaintiffs of the equal protection and benefits of the law."  (*Id*. at

11  22.)  Moreover, with respect to the allegations the court previously noted contradicted a plausible

12  inference that defendants acted with a discriminatory intent or motive, those allegations have

13  been sufficiently clarified in the FAC.  Specifically, plaintiffs now allege "[i]t appears the

14  motivation behind this investigation and related investigations is politically *and racially*

15  motivated, or possibly another personal vendetta by Defendants.  *Indeed this and the related*

16  *investigations involve other members of the Indian community, and the same non-Indian*

17  *Defendants*."  (Doc. No. 31 at 5) (emphasis added).  Plaintiffs also now allege in their FAC that,

18  "Defendants and Defendant Bunch came to believe that Singh was involved in the murder, *though*

19  *such belief was driven by Defendants malicious and predisposed view of the Indian community*."

20  (*Id*. at 6) (emphasis added).

21         Finally, plaintiff Singh has now specifically and plausibly alleged that he was

22  intentionally treated differently by defendants compared to other similarly situated people under

23  investigation.  In this regard, the FAC contains new allegations that defendant Bunch made

24  specific comments indicating a discriminatory animus as well as additional facts suggesting that

25  he targeted the Indian community with his criminal investigation of the homicide in question.  (*Id*.

26  at 22.)  Specifically, plaintiffs' FAC contains the following new allegations:

27              Bunch alleges that Carson represented the Indian Shree Ram
                Mandir Temple for free, and that he does Indian people favors, and
28              Indian people, "do all of his dirty work."  Furthermore, Bunch

1    stated to Singh that Carson represented Singh and Bunch didn't like
     this loyalty to "Indians."  Bunch has stated to Plaintiffs, "You guys
2    (Indians) are all the same and sticking together."  Members of the
     Temple have been approached about Singh and harassed.  At least
3    100 Indian people have been approached, harassed, discriminated,
     or interrogated by Defendants, lead [sic] by Bunch.
4

5    (*Id*. at 22.)

6        Based upon these new allegations in the FAC the court concludes plaintiffs have stated a

7    cognizable claim of discrimination in violation of the Equal Protection Clause.[7]  *See* Doc. No. 27

8    at 10 (and cases cited therein); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

9    2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119,

10   1125-26 (9th Cir. 2002).

11       Accordingly, defendants' motion to dismiss plaintiffs' claim of discrimination in violation

12   of the Equal Protection Clause will be denied.

13           *b.   Fifth Claim For Relief: Discrimination under 42 U.S.C. § 1981*

14       In their fifth claim for relief, plaintiffs cite to 42 U.S.C. § 1981, and generally allege that

15   defendants engaged in racial discrimination in their law enforcement activities.  (Doc. No. 31 at

16   21–22.)  In the prior order addressing defendants' first motion to dismiss, the court construed this

17   claim as one separate and distinct from plaintiffs' claim of racial discrimination in violation of the

18   Fourteen Amendment's Equal Protection Clause.  (*See* Doc. No. 27 at 9, n.4.)  The court will

19   continue to construe plaintiffs' fifth claim for relief in this manner.

20       In moving to dismiss this claim defendants argue that:

21           Section 1981 is not "a general proscription of racial discrimination
             . . . it expressly prohibits discrimination only in the making and
22           enforcement of contracts."  *Patterson v. McLean Credit Union*, 491
             U.S. 164, 176 (1989) [additional citations omitted].  Here, no
23           contract is alleged, and no purposeful discrimination in connection
             with said contract is alleged.
24

25   (Doc. No. 33 at 24.)

26   /////

27   _____

28   [7]  Whether plaintiffs will be capable of presenting evidence supporting such a claim is, of course,
     a separate issue which will no doubt be addressed at a later stage of this litigation.

1    In their opposition to the pending motion to dismiss plaintiffs make no mention of this

2    claim, provide no opposition to its dismissal and have failed to provide any argument as to how

3    their complaint states a plausible claim for relief under 42 U.S.C. § 1981.

4    Despite plaintiff's lack of opposition, the court finds defendants argument unpersuasive.

5    As one judge of this court has observed:

6           The Supreme Court has recognized that "[s]ection 1981 has a much
            broader focus than contractual rights." *Goodman v. Lukens Steel*
7           *Co*., 482 U.S. 656, 661 (1987) (superseded by statute on other
            grounds).   Courts have recognized the right to bring suit under
8           section 1981 outside of cases involving the right to contract. *See*
            *Spriggs v. City of Chicago*, 523 F. Supp. 138, 144, 147 (D.C. Ill.
9           1981) (construing section 1981 to reach a claim that the city had a
            policy of violence toward African–Americans); *Mendez v.*
10          *Rutherford*, 687 F. Supp. 412 (N.D. Ill. 1988) (racially motivated
            arrest and beating fall within the like punishment and equal benefits
11          clause of section 1981); *Jones v. City of Philadelphia*, 491 F. Supp.
            284, 289 (D.C. Pa. 1980) (allowing municipal liability claim based
12          on assault and arrest without probable cause to proceed under the
            full and equal benefit and like punishment clauses of section 1981);
13          *Milburn v. Girard*, 441 F. Supp. 184, 190 (D.C. Pa. 1977) (racially
            motivated beating and false arrest actionable under section 1981);
14          *Raffety v. Prince George's County*, 423 F. Supp. 1045, 1062 (D.
            Md. 1976) (racially motivated detention, interrogation, and
15          investigation by law enforcement is actionable under section 1981);
            *Hawk v. Perillo*, 642 F. Supp. 380, 385 (N.D. Ill. 1985) (police
16          failure to apprehend white attackers because victims were
            African-American states a claim under section 1981); *Central*
17          *Presbyterian Church v. Black Liberation Front*, 303 F. Supp. 894,
            901 (D.C. Mo. 1969) (white congregation stated a claim under the
18          equal benefit of laws clause where black activists deprived them of
            the right to use their property for religious services).
19
            In *Haugabrook v. City of Chicago*, 545 F. Supp. 276, 280 n. 5 (D.C.
20          Ill. 1982), the court briefly addressed the issue of section 1981
            stating "that section 1981 is not confined to contractual matters,
21          though it is most often invoked in that context." "As the Third
            Circuit noted in *Hall v. Pennsylvania State Police*, 570 F.2d 86, 91
22          (3d Cir. 1978), '(r)acially motivated misuse of governmental power
            falls within the ambit of its 'equal benefit' and 'like punishment
23          clauses' which provide that 'all persons ... shall have the same right
            ... to the full and equal benefit of all laws ... for the security of
24          persons and property ... as is enjoyed by white citizens, and shall be
            subject to like punishment, pains, penalties ... and exactions of
25          every kind, and to no other.' " *Id*.

26          Based upon the history of the statute and the review of case law, the
            Court finds that Plaintiffs may state a cause of action under the like
27          punishment clause for violation of section 1981 based upon the
            facts alleged in the complaint.
28

*Jackson v. California*, No. 1:13-cv-1055-LJO-SAB, 2014 WL 3778263, at *8 (E.D. Cal. July 30, 2014).

Based upon the same allegations in the FAC that the court has found state a cognizable claim of discrimination in violation of the Equal Protection Clause, the court also concludes plaintiffs have stated a cognizable claim under 42 U.S.C. § 1981. Accordingly, defendants' motion to dismiss plaintiffs' § 1981 claim will be denied.

### c. Sixth Claim for Relief: RICO Conspiracy

Each defendant seeks dismissal of plaintiffs' RICO conspiracy claim, arguing that plaintiffs failed to address any of the deficiencies previously noted by the court in dismissing this claim. (Doc. No. 33 at 13.) In addition, defendants argue that "[p]laintiffs failed to allege that any defendant agreed to participate in two predicate racketeering acts and that he/she knew that the general nature of the conspiracy extended beyond his individual role." (*Id.*)

Once again plaintiffs have presented no opposition with respect to this aspect of defendants' motion to dismiss. Rather, plaintiffs merely contend that they are continuing to discover activity on the part of defendants supporting this claim and that "[w]ith some discovery, Plaintiff could seek information from Defendants to support their allegations." (Doc. No. 36 at 2.)

As the court previously advised plaintiffs in dismissing their RICO claim with leave to amend:

> To establish a violation of [the RICO conspiracy statute], Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (citation omitted). To plausibly allege the substantive elements of RICO, under § 1962(c), plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citation and internal quotation marks omitted).

(Doc. No. 27 at 11.)

In their FAC plaintiffs have not addressed any of the deficiencies in their RICO conspiracy claim noted by the court in its January 7, 2016 order. Obviously, plaintiffs' hope of

1    uncovering evidence supporting such a claim in discovery cannot take the place of plausible

2    factual allegations in support of this claim in their FAC.  Therefore, plaintiffs' RICO conspiracy

3    claims will be dismissed in their entirety.

4            *d.  Ninth Claim For Relief: Negligent Interference with Contract*

5            Defendants next seek dismissal of plaintiffs' negligent interference with contract claim,

6    arguing plaintiffs have still failed to plausibly allege a cognizable claim in this regard.  (Doc. No.

7    33 at 26.)

8            The court previously dismissed this claim, stating "[i]n California there is no [claim] for

9    negligent interference with contractual relations.  *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9

10   (2009)."  (Doc. No. 27 at 12.)  Nonetheless, plaintiffs re-alleged the same claim in their FAC.

11   Moreover, they have failed to respond to defendants' pending motion to dismiss the claim.

12   Therefore, because nothing has changed since the court last ruled, plaintiffs' negligent

13   interference with contract claim will be dismissed.

14           *e.  Eighth Claim For Relief: Tortious Interference with Contract*

15           Defendants also seek dismissal of plaintiffs' claim for tortious interference with contract.

16   The court previously dismissed this claim due to plaintiffs' failure to allege the existence of a

17   contract.  (Doc. No. 27 at 26-27.)  Defendants now move to dismiss this claim as re-alleged in the

18   FAC, arguing that even though plaintiffs have now alleged the existence of both a purchase

19   contract with the seller and buyer of real property but also a contract with Stewart Title for

20   escrow and title services as part of the same transaction (Doc. No. 31 at 27), the FAC still fails to

21   allege a valid contract or defendants' knowledge thereof and that the claim should therefore be

22   dismissed.  (Doc. No. 33 at 27.)  Plaintiffs have failed to respond to defendants' motion to dismiss

23   this claim.

24           Despite plaintiffs' lack of opposition, the court finds defendants' argument in support of

25   the dismissal of this claim to be unpersuasive.  In their FAC plaintiffs have alleged the existence

26   of contracts as well as defendants' knowledge of those contractual relationships.  (*See* Doc. No.

27   31 at 27-28.)  In their FAC, plaintiffs have also alleged facts in support of their claim for tortious

28   interference with a contract sufficient to survive a motion to dismiss.  *See Pac. Gas & Elec. Co. v.*

1  *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  Accordingly, defendants' motion to dismiss

2  plaintiffs' tortious interference with contract claim will be denied.

3  　　　　　　　　　　*f.*　　*Tenth and Eleventh Claims For Relief: Tortious and Negligent Interference with*

4  　　　　　　　　　　　　*(Prospective) Economic Advantage*

5  　　　　In its earlier order, the court dismissed these claims with leave to amend, concluding that

6  plaintiffs had failed to adequately allege a prospective economic relationship with Stewart Title

7  and, as to the negligence claim, that plaintiffs had failed to allege any defendant owed them a

8  duty of care.  (Doc. No. 27 at 27-28.)

9  　　　　Defendants now seek dismissal of plaintiffs' tortious and negligent interference with

10  prospective economic advantage claims as alleged in their FAC, arguing that plaintiffs have still

11  failed to adequately plead the elements of such claims.  Once again, plaintiffs' counsel has not

12  addressed defendants' arguments in their opposition to the pending motion to dismiss.

13  Nonetheless, the court finds defendants' arguments to be persuasive only with respect to the

14  negligent interference with prospective economic advantage claim.

15  　　　　In their FAC, plaintiffs have now alleged that defendants knew of plaintiffs' ongoing

16  business relationships with buyers, sellers, title and escrow companies, as well as of plaintiffs'

17  prospective business with the same.  (Doc. No. 31 at 30-31.)  Plaintiffs have also alleged that

18  defendants knew of the future economic benefit to plaintiffs of using Steward Title for real estate

19  transactions.  (*Id.* at 30, 32.)  When coupled with the other allegations of the FAC, these

20  allegations are sufficient to state a cognizable claim for tortious interference with economic

21  advantage.  *See Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987) (listing elements of that cause of

22  action).

23  　　　　However, with regard to their claim of negligent interference with prospective economic

24  advantage, plaintiffs have still failed to allege in their FAC that any defendant owed them a duty

25  of care.  Therefore, defendants' motion to dismiss plaintiffs' claim for tortious interference with

26  prospective economic advantage will be denied, while their motion to dismiss plaintiffs' claim for

27  negligent interference with prospective economic advantage will be granted.

28  /////

1          *g.   Thirteenth Claim for Relief: Negligent Infliction of Emotional Distress*

2          Defendants again seek dismissal of plaintiffs' negligent infliction of emotional distress

3    claim as alleged, arguing that in their FAC plaintiffs have failed to correct the deficiencies

4    previously noted by the court.  (Doc. No. 33 at 20-21.)  As noted by defendants, plaintiffs fail to

5    address defendants' argument for dismissal of this claim in their opposition.

6          In the order dismissing plaintiffs' original complaint with leave to amend, the court

7    concluded that plaintiffs had failed to allege sufficient facts in support of such a claim under

8    either the "bystander" or "direct victim" theories of recovery provided under California law.

9    (Doc. No. 27 at 29-3) (citing *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071, 1074 (1992),

10   *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) ,and *Megargee*

11   *ex rel. Lopez v. Wittman*, No. CVF 06-0684 AWILJO, 2006 WL 2988945, at *16 (E.D. Cal. Oct.

12   17, 2006)).  In their FAC plaintiffs have merely added the conclusory allegation that "Defendants

13   have a duty to act as a reasonable person would under the same or similar circumstances."  (Doc.

14   No. 31 at 34.)

15         This new allegation does nothing to correct the deficiency previously noted by the court in

16   dismissing this claim.  Accordingly, defendants' motion to dismiss plaintiffs' negligent infliction

17   of emotional distress claim will be granted.

18         *h.   First Claim for Relief: § 1983 Claim*

19         Defendants seek dismissal of plaintiffs' first claim for relief under 42 U.S.C. § 1983,

20   arguing that plaintiffs' FAC has failed to "identify what Constitutional right they are seeking

21   relief thereunder."  (Doc. No. 33 at 22.)  Again, plaintiffs do not appear to have responded to any

22   substantive opposition to this aspect of defendants' motion to dismiss.

23         In the order dismissing plaintiffs' original complaint with leave to amend, the court

24   advised plaintiffs as follows:

25              [Section] 1983 is not itself a source of substantive rights, but
                merely provides a method for vindicating federal rights elsewhere
26              conferred."   *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)
                (citations and internal quotation marks omitted).  In support of their
27              First Claim, Plaintiffs  assert legal conclusions devoid of factual
                matter, and they "fail to explain in their [O]pposition [brief] how
28              their First [claim] differs from their [remaining claims]."  *Fontana*,

                                           14

> 750 F. Supp. 2d at 1155. "It appears to this Court that Plaintiffs have identically pled [multiple] claims for relief: one for violation of their rights under [§] 1983 and the [remaining claims] for violations of their rights under the Fourth . . . and Fourteenth Amendments." *Id.* Since each Plaintiff's "§ 1983" claim "is duplicative and fails as a matter of law," *id.*, this portion of the dismissal motion is granted.

(Doc. No. 27 at 18-19.)

Despite the direction provided by the court in its prior order, plaintiffs nonetheless re-alleged this stand-alone § 1983 claim in their FAC, apparently without a single change.

Accordingly, defendants' motion to dismiss plaintiffs' first claim, the stand-alone § 1983 claim, will be granted.[8]

**B. Defendant Fladager**

In their second, third, and fourth claims for relief against all defendants, plaintiffs allege that they were subjected to: unlawful detention(s), deliberate indifference to a serious risk of harm while in custody and unlawful search and seizure.[9]  (Doc. No. 31 at 20-21.)  It would appear that these constitutional claims are all brought in this action pursuant to 42 U.S.C. § 1983.  In addition, plaintiffs bring their various state law claims against all defendants.

Defendant District Attorney Fladager has moved to dismiss all claims, whether they are brought against her in her official or individual capacity.  (Doc. No. 33 at 14-18.)  Below, the court will address each of defendant Fladager's arguments.

*a. Official Capacity § 1983 Claims*

Defendant Fladager seeks dismissal of plaintiff Singh's § 1983 claims brought against her in her official capacity as the Stanislaus County District Attorney, arguing such claims "fail to state sufficient facts, or are barred by the Eleventh Amendment." (*Id.* at 14.)  Specifically, defendant Fladager points out that in its prior order the court found that plaintiffs' original complaint failed to adequately allege that she was a policymaker for Stanislaus the County and

---

[8]  Several of plaintiffs' other constitutional claims are also brought pursuant to 42 U.S.C. § 1983 and those claims will be addressed separately herein.

[9]  Although not so alleged in plaintiffs' FAC, it appears that these claims and the allegations supporting them pertain only to plaintiff Singh and not to plaintiff Karan.

1   that the allegations of their FAC are no different in this regard.  (*Id.*)  In their opposition to the

2   pending motion plaintiffs disagree, summarily arguing that they have adequately alleged in their

3   FAC that their constitutional rights were violated pursuant to county policy and that as District

4   Attorney, defendant Fladager was the final decision maker with respect to those policies.  (Doc.

5   No. 36 at 3.)

6       In the FAC plaintiff Singh alleges that defendant District Attorney Fladager directed the

7   homicide investigation in question, trained and supervised the specific investigators named as

8   defendants in this action, failed to conduct sufficient training of the employees of her office on

9   "the constitutional limitations on the use of force and abuse of power," and was responsible for a

10  constitutionally-deficient policies.  (Doc. No. 31 at 2, 16–17.)

11      In dismissing plaintiffs' original complaint with leave to amend the court found the

12  allegations that defendant District Attorney Fladager was a policymaker for the county to be

13  conclusory.  (Doc. No. 27.)  The court now finds the allegations of the FAC to be sufficient in this

14  regard.  Moreover, the court observes that the question of whether a District Attorney in

15  California is entitled to Eleventh Amendment immunity is a complex one, dependent on the

16  identification of the specific function the official is involved in.

17      The Eleventh Amendment does bar suits for damages against state officials acting in their

18  official capacity, in the absence of the state's consent to suit.  *See Pennhurst State Sch. & Hosp. v.*

19  *Halderman*, 465 U.S. 89, 100 (1984) ("It is clear ... that in the absence of consent a suit in which

20  the State or one of its agencies or departments is named as the defendant is proscribed by the

21  Eleventh Amendment."); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Jackson v.*

22  *Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982) ("Eleventh Amendment immunity extends to

23  actions against state officers sued in their official capacities. . . .").  The California Supreme Court

24  has determined that under some circumstances District Attorneys in California represents the

25  state, not the county.  *See Venegas v. Cnty. of L.A.,* 32 Cal.4th 820, 839 (2004); *Pitts v. County of*

26  *Kern*, 17 Cal. 4th 340, 345 (1998).  The Ninth Circuit has also recognized that "[I] the District

27  Attorney was a state officer when [s]he engaged in the acts of which [a plaintiff] complains, [s]he

28  is entitled to Eleventh Amendment immunity (to the extent that [s]he is sued in h[er] official

1   capacity) . . . ." *Ceballos v. Garcetti*, 361 F.3d 1168, 1182 (9th Cir. 2004), *reversed and*

2   *remanded on other grounds*, 547 U.S. 410 (2006).  However, the Ninth Circuit has also cautioned

3   that where the allegations of a complaint focus on the establishment of policies and training

4   related to the general operation of the District Attorney's Office, a District Attorney acts on

5   behalf of the county, not the state, and may be subject to suit under § 1983.  *See Jackson v.*

6   *Barnes*, 749 F.3d 755-62 (9th Cir. 2014) ("In conclusion, we hold that Jackson has properly

7   pleaded a claim of *Monell* liability against the Sheriff's Department, and that the Sheriff's

8   Department is subject to suit under § 1983 for its investigative activities."); *Goldstein v. City of*

9   *Long Beach*, 715 F.3d 750, 753-62 (9th Cir. 2013) ("[T]he Los Angeles County District Attorney

10  represents the county when establishing policy and training related to the use of jailhouse

11  informants.  Therefore, a cause of action may lie against the County under 42 U.S.C. § 1983.");

12  *see also Brewster v. Shasta Cnty.*, 275 F.3d 803, 807–08 (9th Cir. 2001) (holding that a sheriff is

13  a county actor when investigating crime).

14        Here, the issue has not been adequately briefed in connection with the pending motion and

15  the court, therefore, declines to dismiss plaintiffs' constitutional claims brought against defendant

16  Fladager in her official capacity.

17        *b.  State Claims*

18        Counsel on behalf of defendant District Attorney Fladager also seeks dismissal of

19  plaintiffs' state law claims brought against her, arguing that just as in the original complaint the

20  FAC fails to allege facts reflecting that defendant Fladager had any direct and personal

21  participation in the events giving rise to plaintiffs' claims.  (Doc. No. 33 at 17.)[10]

22        Just as was the case when defendant Fladager moved to dismiss these claims brought

23  against her in the original complaint, plaintiffs present no opposition to the dismissal of these

24  same claims alleged in their FAC as to defendant Fladager.

25  /////

26

---

27  [10]  In addition, counsel contends that defendant District Attorney Fladager is immune from any
     claims brought under state law arising out of the alleged actions of other defendants under
28  California Government Code § 820.8.  (Doc. No. 33 at 17.)

Because plaintiffs have failed to allege any facts in their FAC suggesting that the District Attorney was personally involved in the actions giving rise to their state law claim, defendant Fladager's motion to dismiss those claims brought against her will be granted.  (See Doc. No. 27 at 14.)

**C. The County**

> *a.  Claims Asserted under 42 U.S.C. § 1983*

Defendant Stanislaus County has moved to dismiss "all claims against the County under § 1983," arguing that District Attorney Fladager and the other defendants, in their official capacities, act on behalf of the state, not the county.  (Doc. No. 33 at 19-20.)

For the same reasons set forth above with respect to defendant Fladager's arguments in support of the dismissal of the constitutional claims brought against her, the court finds the allegations of the FAC to be sufficient and dismissal of these claims against the county unwarranted based upon the briefing before the court.  Therefore, the County's motion to dismiss will be denied in this regard.

> *b.  State Claims*

The defendant County next moves to dismiss all of plaintiffs' state law claims brought against it as barred by California Government Code § 815.  (Doc. No. 33 at 26–27.)   Yet again, plaintiffs offer no substantive opposition to this aspect of the pending motion.

California Government Code § 815 provides that "[e]xcept as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Thus, in California public entities are not subject to common law tort liability; all liability must be pursuant to statute. *See Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 897 (2009).   However, by statute, California law also imposes "liability on counties under the doctrine *of respondeat superior* for acts of county employees; it grants immunity to counties only where the public employee would also be immune." *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002); *see also* CAL. GOV'T CODE § 815.2; *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 638 (9th Cir. 2012) ("California public entities, including local governments, are derivatively liable for the negligent

18

1  acts or omissions of public employees within the scope of their employment. See Cal. Gov't Code

2  § 815.2(a).  But if the employee successfully asserts immunity, the public entity is shielded from

3  derivative liability."); *Scott v. County of Los Angeles*, 27 Cal. App. 4th 125, 139–40 (1994)

4  ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and

5  omissions of its employees under the doctrine of *respondeat superior* to the same extent as a

6  private employer.  Under subdivision (b), the County is immune from liability if, and only if, [the

7  employee] is immune.").

8       In their FAC plaintiffs allege that Stanislaus County is being sued for the acts of their

9  employees and agencies.  (Doc. No. 31 at 2.)  To the extent that plaintiffs' state law claims

10  against the County are based upon a theory of derivative liability under § 815.2, they may be

11  brought against the County under *respondeat superior* where its employees have not successfully

12  asserted immunity.  Accordingly, defendant Stanislaus County's motion to dismiss plaintiffs'

13  state law claims brought pursuant to California Government Code§ 815.2 will be denied.[11]

14     **D.  Sheriff Christianson**

15       Defendant Stanislaus County Sheriff Christianson moves for dismissal of all claims

16  brought against him, arguing that his name appears only in the caption and that no factual

17  allegations mentioning him appear in the body of the FAC.  (Doc. No. 33 at 18.)  Plaintiffs do not

18  contest this point in their opposition to the pending motion.

19       Because the FAC literally contains no allegations with respect to defendant Sherriff

20  Christianson, he will be dismissed from this action.

21     **E.  Sheriff's Department**

22       The Stanislaus County Sheriff's Department seeks dismissal of plaintiffs' claims against

23  it, contending it is improperly named as a defendant because the proper party defendant is

24  Stanislaus County, which has also been named.  (Doc. No. 33 at 18-19.)  In their opposition to the

25

26  [11]  The court construes plaintiffs' FAC as proceeding against the county with respect to these
claims only pursuant to California Government Code § 815.2.  Were plaintiffs attempting to

27  proceed against the county and its agencies on a direct liability theory with respect to their state
law causes of action, the allegations of the FAC would be found to be deficient by the court and

28  any such claim would be subject to dismissal.

1    pending motion, plaintiffs do not challenge this assertion.  However, the court notes that in their

2    FAC plaintiffs have alleged that the Stanislaus County Sheriff Department is responsible for the

3    actions of its deputy sheriffs and that the Department was involved in the investigation in

4    question.  (Doc. No. 31 at 3, 6.)

5         The court's prior order addressing plaintiff's original complaint dismissed the Stanislaus

6    County Sheriff Department as a defendant, concluding that plaintiffs had not sufficiently alleged

7    what function the Sheriff's Department performed in this case which would subject it to liability.

8    (Doc. No. 27 at 18.)  Plaintiffs' FAC does not cure this previously noted deficiency and in light of

9    plaintiffs' lack of opposition to the dismissal of the Sheriff's Department as a separate defendant,

10   this aspect of defendants' motion to dismiss will be granted.

11   **F.   Defendant Harris**

12        *a.   Federal Claims under 42 U.S.C. §§ 1981 and 1983*

13        The court previously dismissed these claims as to defendant Harris as alleged in the

14   original complaint.  (See Doc. No. 27 at 19-20.)  Defendant Harris now moves to dismiss all of

15   plaintiffs' claims brought against him under §§ 1981 and 1983, arguing that the FAC's allegations

16   with respect to those claims are vague, conclusory, and fail to allege facts specific to him.  (Doc.

17   No. 33 at 21.)  Plaintiffs' opposition to this aspect of the motion is difficult to decipher but

18   appears to suggest that defendant Harris has not sufficiently identified the FAC's deficiencies

19   with respect to these claims.  In any event, plaintiffs' opposition is unpersuasive.

20        "Vague and conclusory allegations of official participation in civil rights violations are not

21   sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d

22   266, 268 (9th Cir. 1982).  It is also axiomatic that:

23            A person deprives another of a constitutional right, within the
             meaning of section 1983, if he does an affirmative act, participates
24           in another's affirmative acts, or omits to perform an act which he is
             legally required to do that causes the deprivation of which [a
25           plaintiff complains]. The inquiry into causation must be
             individualized and focus[ed] on the duties and responsibilities of
26           each individual defendant whose acts or omissions are alleged to
             have caused a constitutional deprivation.

27

28   *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (alteration in original) (citation and internal

quotation marks omitted).

Plaintiffs have failed to adequately address the deficiencies noted in the court's prior dismissal order with respect to these claims brought against defendant Harris.  In their FAC plaintiffs merely allege in conclusory fashion that defendant Chief Deputy District Attorney Harris: (1) trained and supervised the investigators; (2) is responsible for the actions of the investigators and officers named as defendants; (3) co-led the Kauffman homicide investigation; (4) personally handled the investigation and criminal prosecution of Singh; (5) attempted to illicit information from Singh incriminating Frank Carson; and (6) is responsible for a constitutionally-deficient policy along with defendants Stanislaus County and Stanislaus County District Attorney Fladager.  (Doc. No. 31 at 2, 5, 15-17.)  However, nowhere do plaintiffs allege specific acts on the part of defendant Harris that caused any of the deprivations of plaintiffs' constitutional rights asserted in their FAC.[12]

Accordingly, defendants' motion to dismiss plaintiffs' constitutional claims brought against defendant Harris will be granted.

   *b.  State Claims*

The court previously dismissed these claims as to defendant Harris as they were alleged in the original complaint.  (See Doc. No. 27 at 20.)  Defendant Harris now seeks dismissal of plaintiffs' state claims brought against him in the FAC, arguing that plaintiffs have failed to plead any facts to support those claims.  (Doc. No. 33 at 22.)  Plaintiffs' opposition is, as noted immediately above, both difficult to decipher and unpersuasive.

In their FAC plaintiffs have not alleged any specific acts on the part of defendant Harris upon which a finding of liability could be based with respect to their state law claims against him. Therefore, defendant Harris' motion to dismiss plaintiffs' state law claims against him will be granted.

---

[12]  While it is reasonable to infer from the allegations of the FAC that the District Attorney of Stanislaus County is the final decision maker with respect to the policies or practices of that office, absent some factual allegations the same inference cannot be fairly made with respect to the Chief Deputy.  Here, the FAC is devoid of such factual allegations permitting such an inference.

1    **G.  Defendant Bunch**

2        *a.   Section 1983 Claims: Unlawful Arrest,  Detention, and Seizure Claims*

3        Defendant Bunch seeks dismissal of plaintiffs' claims against him for unlawful arrest,

4    unlawful detention and unlawful seizure brought under 42 U.S.C. § 1983, arguing that the

5    allegations with respect to these claims as to him are vague, conclusory, and fail to sufficiently

6    allege causation.  (Doc. No. 33.)

7            i.    Unlawful arrest claim

8        With respect to the unlawful arrest claim, defendant Bunch argues that the FAC fails to

9    allege that the arrests of plaintiff Singh were without probable cause.  He points out that the state

10   court records reflect that Singh was arraigned on each of the felony charges and that those

11   prosecutions continue, suggesting that probable cause was established as to each of the criminal

12   charges brought against plaintiff Singh.  (*Id.* at 24-25.)

13       In the FAC plaintiff Singh alleges that he was deprived of his property and liberty

14   interests, first, when he was unlawfully arrested and jailed without probable cause and, second,

15   when his release on bail was intentionally delayed by defendants.  (Doc. No. 31 at 20.)  Plaintiffs

16   also allege that defendant Bunch was involved in Singh's arrests (*id.* at 9, 11, 14) but, while

17   suggesting that the arrests were unusual and motivated by the defendants' apparent desire to

18   prosecute Carson, they fail to allege that probable cause justifying the arrests was lacking.

19       Because the FAC fails to present factual allegations plausibly showing that defendant

20   Bunch lacked probable cause to arrest plaintiff Singh, defendants' motion to dismiss plaintiff

21   Singh's unlawful arrest claim will be granted.

22           ii.   Unlawful detention claim

23       Defendant Bunch also seeks dismissal of plaintiff Singh's unlawful detention claim on the

24   grounds that the FAC's conclusory allegations made in support of this claim are insufficient.

25   (Doc. No. 33 at 25.)  Plaintiffs' argument in opposition is the same difficult to decipher one noted

26   above.

27       In this claim plaintiff alleges that his release from jail following his arrests was

28   intentionally delayed.  In the FAC it is alleged that Singh was intentionally prevented from

22

posting bail and being released from jail following his arrests and that even after his bail was posted, his release was intentionally delayed.  (Doc. No. 31 at 10-13, 15.)  Specifically, the FAC alleges in connection with Singh's first arrest, after posting bond at 10:00 p.m. he was not released until approximately  4:00 a.m., some six hours later and after being required to change into inmate clothing.  (*Id.* at 10.)  It is also alleged in connection with his second arrest that plaintiff's Singh's initial bail hearing was postponed for a day, despite the fact that his second child was being born, and that although bail was posted after that hearing, plaintiff Singh was again not released from jail until 4 a.m. the following day.  (*Id.* at 13.)  Finally, the FAC alleges that following his third arrest, plaintiff Singh posted bond at approximately 5:45 p.m. but was not released from jail until approximately 10:00 p.m.  (*Id.* at 15.)

This claim against defendant Bunch as plead in the original complaint was dismissed by the court with leave to amend based upon a finding that the allegations of the original complaint in this regard were vague and conclusory.  (Doc. No. 27 at 21.)  However, in their FAC plaintiffs have included new allegations of comments made and actions taken by defendant Bunch from which it can reasonable be inferred that he was involved in the alleged in plaintiff's Singh's alleged delayed release from custody on bail.  (See Doc. No. 31 at 10-13, 15.)  Courts have held that there is no federal constitutional right to post bail immediately following one's arrest.[13]  *See Fields v. Henry County, Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012) ("There is no constitutional right to speedy bail."); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 283 (7th Cir. 1991) (Will, J., concurring) (holding that plaintiff's constitutional rights were not violated by his arrest and overnight detention because the Eighth and Fourteenth Amendments do not guarantee "instant release for misdemeanors or any other offense"); *Cf. Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest.").  However, courts have also held that a Fourteenth Amendment liberty interest arises once bail has been set, and that a significant delay in release from custody after bail has been posted may violate the due process

---

[13]  It appears that the Ninth Circuit has not yet addressed the issue of whether or not the federal constitution provides for a right to speedy admission to bail.  *See Farrow v. Lipetzky*, No. 12–cv–06495–JCS, 2013 WL 1915700 at *22 (N.D Cal. 2013).

clause.  *See Dodds v. Richardson*, 614 F.3d 1185, 1190 (10th Cir. 2010) (after the plaintiff was prevented from paying the required bond for three days pursuant to jail policies, he "was unnecessarily detained without a legitimate goal . . . in violation of his due process rights."); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (where jail authorities refused to accept a court approved property bond, holding that there is a "right to be free from continued detention after it was or should have been known that the detainee was entitled to release").

In the FAC it appears plaintiff Singh has not alleged that any of the intentional delays in his release from custody after the posting bail were of more than seven hours in length.[14]  While it is unclear whether such allegations are sufficient to state a cognizable claim for violation of one's constitutional rights, based upon the briefing submitted in connection with this motion, the court is not prepared to rule that they do not.  Therefore, defendant Bunch's motion to dismiss plaintiff Singh's unlawful detention claim will be denied.

iii.   Unlawful seizure claim

Defendant Bunch next seeks dismissal of plaintiffs § 1983 claim brought against him for unlawful seizure, pointing out that in dismissing plaintiffs' original complaint the court found that plaintiffs had failed to identify any property that defendant Bunch had allegedly seized.  (Doc. No. 33 at 25) (citing Doc. No. 27 at 23).  Defendant Bunch contends that plaintiffs' FAC has failed to cure this previously noted deficiency.  (*Id*.)

In their FAC plaintiffs merely allege, in conclusory fashion, that defendants arrested plaintiff Singh and "seized his property without probable cause."  (Doc. No. 31 at 21.)  Plaintiffs again allege, as they did in the original complaint, that investigators searched plaintiff Karan's real estate office and seized property after being given the keys to the office by plaintiff Singh.  (*Id*. at 14; Doc. No. 1 at 11-12.)  The only new allegation in the FAC appear to be that plaintiff Singh actually accompanied the investigators during their search and that among the items seized

---

[14]  Although the allegations of the FAC are somewhat ambiguous as to when bail was actually posted in all instances, it is possible that plaintiff Singh is attempting to claim that the delay in his release following his posting of bail in connection with his second arrest was delayed longer – perhaps as long as up to twenty hours.  The court also notes, however, that due to scheduled release times at county jails, delays in the neighborhood of several hours from the posting of bail to actual release are not unusual.

1   were cell phones and GPS devices belonging to Singh.  (Doc. No. 31 at 14.)

2   These few lines of new alleged facts are insufficient to cure the previously noted

3   deficiencies. Just as was the case with the original complaint, the FAC fails to allege any facts

4   from which it can be inferred that probable cause for the search of the Royal Realty Office was

5   lacking or that probable cause was even necessary, since it appears from the allegations of the

6   FAC that plaintiffs cooperated to at least some degree in the search.  Without more, the

7   allegations of the FAC are insufficient to state a cognizable § 1983 claim against defendant

8   Bunch for unlawfully seizing property from plaintiff Singh without probable cause.  Accordingly,

9   defendants' motion to dismiss will be granted as to this claim.

10          *b.  State Law Claims: California Government Code § 945.3*

11   Finally, defendant Bunch seeks dismissal of plaintiffs' state law claims brought against

12   him, arguing that under California Government Code § 945.3, any and all claims arising out of

13   criminal charges that have filed against plaintiff Singh and which are still pending may not be

14   pursued at this time.  (Doc. No. 33 at 26.)

15   Plaintiff Singh opposes this aspect of the motion to dismiss, arguing that defendant

16   Bunch's alleged conduct was in fact related to matters beyond the scope of the criminal charges

17   which remain pending against plaintiff.  (Doc. No. 36 at 6.)

18   California Government Code § 945.3 provides in pertinent part:

19          No person charged by indictment, information, complaint, or other
        accusatory pleading charging a criminal offense may bring a civil
20          action for money or damages against a peace officer or the public
        entity employing a peace officer based upon conduct of the peace
21          officer relating to the offense for which the accused is charged,
        including an act or omission in investigating or reporting the
22          offense or arresting or detaining the accused, while the charges
        against the accused are pending before a justice, municipal, or
23          superior court.

24          Any applicable statute of limitations for filing and prosecuting these
        actions shall be tolled during the period that the charges are pending
25          before a justice, municipal, or superior court.

26   The purposes of § 945.3 are to eliminate the use of civil damage complaints as plea bargaining

27   levers and to prevent the use of civil actions as a discovery device to inquire into prosecutorial

28   information while criminal charges are pending.  *See Harding v. Galceran*, 889 F.2d 906, 908-09

1     (9th Cir. 1989) (*citing McMartin v. Los Angeles County*, 202 Cal.App.3d 848, 855–56 (1988)).

2         Here, in the FAC plaintiff s assert various claims based upon defendant Bunch's alleged

3 conduct in connection with the Kauffman homicide investigation.  (Doc. No. 31 at 10.)  It appears

4 to be undisputed that plaintiff Singh has not been criminally charged in any way with respect to

5 that homicide.  By the same token, the homicide investigation and the three criminal

6 cases[15] subsequently brought against plaintiff Singh clearly are related to one another.[16]

7         However, defendants have not cited any authority for the proposition that dismissal of

8 plaintiffs' state law claims against defendant Bunch is appropriate.  Rather, while not entirely

9 clear, it may be that a stay of those claims during the pendency of the state criminal proceedings

10 is the appropriate course.  *See Carrillo v. County of Siskiyou*, No. Civ. S—07-0706 RRB CMK,

11 2008 WL 1767020, at *2 (Apr. 15, 2008); *but see Johnson v. City of Chico*, 725 F. Supp. 1097,

12 1100-1104 (E.D. Cal. 1989).  Accordingly, defendant Bunch's motion to dismiss plaintiffs' state

13 law claims against him pursuant to California Government Code § 945.3 will be denied without

14 prejudice to a motion for a stay of these proceedings or other appropriate motion.

15 **CONCLUSION**

16         For the foregoing reasons, defendants' motion to dismiss (Doc. No. 33) plaintiffs' FAC is

17 denied in part and granted in part as follows:

18     1)   Defendants' motion to dismiss plaintiffs' first claim, the stand-alone claim for relief under 42

19         U.S.C. § 1983 is granted;

20

21 [15]  Defendants have requested that the court take judicial notice of three case information sheets from the criminal cases purportedly still pending against plaintiff Singh in the Stanislaus County

22 Superior Court.  (Doc. No. 33-2.)  The court will take judicial notice of these state court records. *See, e.g., Betker v. U.S. Trust Corp. (In re Heritage Bond Litig.),* 546 F.3d 667, 670 n. 1, 673 n. 8

23 (9th Cir. 2008) (*citing U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992)); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Cactus*

24 *Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004).  These case information sheets reflect that Singh has been arraigned on criminal charges in each of the three

25 cases but not that plaintiff Singh has been charged in connection with the homicide.

26 [16]  Plaintiffs essentially allege in their FAC that the arrests, searches, bail proceedings, detentions

27 and the bringing of charges in the three cases against Singh, as well as other actions allegedly taken by defendants, were motivated by their misguided and misdirected pursuit of the homicide

28 investigation.

2) Defendants' motion to dismiss plaintiffs' fifth claim of racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause is denied;

3) Defendants' motion to dismiss plaintiffs' fifth claim of discrimination brought under 42 U.S.C. § 1981 is denied;

4) Defendants' motion to dismiss plaintiffs' sixth claim alleging a RICO conspiracy is granted;

5) Defendants' motion to dismiss plaintiffs' eighth claim alleging tortious interference with contract is denied;

6) Defendants' motion to dismiss plaintiffs' ninth claim alleging negligent interference with contract is granted;

7) Defendants' motion to dismiss plaintiffs' tenth claim alleging tortious interference with economic advantage is denied;

8) Defendants' motion to dismiss plaintiffs' eleventh claim alleging negligent interference with economic advantage is granted;

9) Defendants' motion to dismiss plaintiffs' thirteenth claim alleging negligent infliction of emotional distress is granted;

10) Defendant District Attorney Fladager's motion to dismiss all constitutional claims brought against her in her official capacity under § 1983 is denied, while her motion to dismiss all state law claims brought against her is granted and those state law claims are dismissed as to defendant Fladager without prejudice, but without leave to amend absent further order of the court upon good cause being shown;

11) Defendant Stanislaus County's motion to dismiss all constitutional claims brought against it as well as all state law claims brought under California Government Code § 815.2 is denied;

12) Defendants Sheriff Adam Christianson's motion to dismiss all claims brought against him is granted and all such claims are dismissed from this action without prejudice, but without leave to amend absent further order of the court upon good cause being shown;

13) Defendant Stanislaus County Sheriff Department's motion to dismiss all claims brought against it is granted and all such claims are dismissed from this action without prejudice, but without leave to amend absent further order of the court upon good cause being shown;

14)  Defendant Chief Deputy District Attorney Harris' motion to dismiss all constitutional claims as well as all state law claims brought against him is granted and all such claims are dismissed from this action without prejudice, but without leave to amend absent further order of the court upon good cause being shown;

15)  Defendant District Attorney's Office investigator Bunch's motion to dismiss plaintiffs' unlawful arrest and unlawful seizure claims brought against him is granted and these claims are dismissed from this action without prejudice, but without leave to amend absent further order of the court upon good cause being shown.  Defendant Bunch's motion to dismiss the unlawful detention and state law claims brought against him are denied;

16)  Plaintiffs may proceed on all claims set forth in their FAC as to which dismissal has been denied above or which were not the subject of defendants' motion to dismiss including those previously found to be cognizable by the court;

17)  If during discovery plaintiffs obtain new or additional evidence that would that would allow them to allege facts stating additional cognizable claims, they may seek leave to do so by filing a motion to further amend their complaint; and

18)  The matter is referred back to the Magistrate Judge for further proceedings.[17]

IT IS SO ORDERED.

Dated:   __**January 11, 2017**__          _____

UNITED STATES DISTRICT JUDGE

_____

[17]  As indicated at the outset, defendants Frank Navarro, John Evers, Doe Sherriff #1, and Doe Sherriff #2 have not yet appeared in this action and therefore have not moved to dismiss any of the claims brought against them in the FAC.